**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roberto LOPEZ, Defendant–Appellant.**

No. 02–6544.

United States Court of Appeals,
Sixth Circuit.

July 14, 2004.

Charles P. Wisdom, Jr., Asst. U.S. Attorney, U.S. Attorney's Office, Lexington, KY, Stephen C. Smith, Asst. U.S. Attorney, U.S. Attorney's Office, London, KY, for Plaintiff–Appellee.

Michael Dean, Irvine, KY, for Defendant–Appellant.

Charles Anthony Davidson, Oneida, KY, Defendant–Appellant Pro Se.

Before: KEITH and CLAY, Circuit Judges; and O'MEARA, District Judge.*

KEITH, Circuit Judge.

Defendant–Appellant Roberto Lopez ("Lopez") appeals his sentence from his conviction of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. Lopez argues that the district court erred in (1) applying a two-level enhancement for obstruction of justice pursuant to § 3C1.1 of the United States Sentencing Guidelines

* The Honorable John Corbett O'Meara, United States District Court for the Eastern District of Michigan, sitting by designation.

("Sentencing Guidelines"); and (2) denying an acceptance of responsibility reduction pursuant to § 3E1.1 of the Sentencing Guidelines. For the reasons set forth below, we **AFFIRM** Lopez's sentence.

## II. BACKGROUND

This case resulted from a Tennessee Bureau of Investigation ("TBI") undercover investigation. On December 6, 2000, in Memphis, Tennessee, Lopez approached a confidential informant regarding the sale of cocaine and marijuana. The confidential informant stated that he was interested in the purchase of methamphetamine, but that he would contact Lopez later regarding the purchase of cocaine and marijuana. On December 9, 2000, the confidential informant purchased approximately 249 grams of cocaine. At this meeting, Lopez told the confidential informant that he was expecting a shipment of methamphetamine from a source in California, later identified as Codefendant Espirio Guerrero ("Guerrero"). Lopez and Co-defendant Isaac Bolin ("Bolin") traveled to California to meet with Guerrero and to discuss the shipment of methamphetamine from California to Memphis, Tennessee.

Upon returning to Memphis, Tennessee, Lopez, Guerrero, and the confidential informant arranged for the delivery of two pounds of methamphetamine to an undercover TBI agent for $11,000.00 per pound. On January 4, 2001, Guerrero sent the package of methamphetamine via UPS to an address in Memphis, Tennessee. Law enforcement officers secured the package upon arrival. Over the next several days, the confidential informant and the undercover agent made partial payments to Lopez. Bolin then wired partial payments to Guerrero in California via Western Union.

On January 8, 2001, Lopez advised the confidential informant that Guerrero would be sending more methamphetamine. On January 13, 2001, Lopez advised the confidential informant that Guerrero was sending a second package containing two pounds of methamphetamine to Memphis, Tennessee via UPS. On January 22, 2001, the package arrived and law enforcement officers secured the package. As with the first package, the confidential informant and the undercover agent made partial payments to Lopez. Bolin then wired partial payments to Guerrero in California via Western Union. Guerrero, however, was expecting an additional payment of $20,000.00 for the methamphetamine. Therefore, on January 30, 2001, he traveled to Memphis, Tennessee to collect the balance owed to him and to negotiate future sales.

On February 2, 2001, Lopez arranged to meet the undercover agent at a local restaurant so that the undercover agent could pay Guerrero for the methamphetamine. Law enforcement officers conducted surveillance and saw Lopez, Guerrero, and Bolin arrive in the area. The officers stopped their vehicle and arrested them. Because Lopez agreed to cooperate with the ongoing federal investigation, the officers released him and did not charge him. On February 7, 2001, Lopez met with two law enforcement officers, Francisco Hildalgo ("Officer Hildalgo") from the TBI and Freddie Romero ("Officer Romero") from the Memphis Police Department to discuss how he could cooperate in the investigation. After this meeting, however, Lopez disappeared.

In an attempt to locate Lopez, on February 12, 2001, officers went to his mother's residence. Lopez's vehicle was parked at the house. Inside the vehicle, officers found a handwritten note in Spanish that stated, "[m]other, I had to go far away because I had serious problems with the police and I didn't want to tell you anything." J.A. at 90. On February 27, 2001, officers also interviewed Jessica Lytton ("Lytton"), Bolin's former girlfriend, at

her residence. Lytton stated that she received a telephone call from Lopez four days prior. Lopez stated that he was out of the country and that he would be gone for a couple of years.

On March 13, 2001, a federal grand jury in the Western District of Tennessee returned a three-count indictment against Lopez, Guerrero, and Bolin. Count One charged the defendants with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. Count Two and Count Three charged the defendants with aiding and abetting the possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On October 4, 2001, a bounty hunter located Lopez in Mexico, where he had been for eight months, and brought him to California, where he was arrested. He was later remanded into custody in Memphis, Tennessee.

On June 13, 2002, pursuant to a plea agreement, Lopez entered a guilty plea to Count One of the indictment. The Government agreed to move for the dismissal of Count Two and Count Three of the indictment at sentencing. On September 13, 2002, the probation department filed a presentence investigation report ("PSR"), which recommended a two-level obstruction of justice enhancement and a denial of an acceptance of responsibility reduction. Both Lopez and the Government filed position papers in response.

On November 25, 2002, the district court held a sentencing hearing. At the hearing, defense counsel objected to the obstruction of justice enhancement. Defense counsel reasoned that, because the Government did not charge Lopez at the time of his departure to Mexico, the district court could not conclude that he willfully fled the jurisdiction to delay proceedings. Furthermore, defense counsel argued that Lopez was entitled to a credit for acceptance of responsibility because he assisted the police in another drug investigation.

In opposition to defense counsel's objections, the Government argued that Lopez fled to Mexico and, thus, willfully delayed his case. In support of its arguments, the Government presented two witnesses. The Government first called Officer Romero who testified regarding Lopez's apprehension on February 2, 2001 and his meeting with Lopez on February 7, 2001, at which Lopez indicated that he would cooperate with law enforcement. In addition, Officer Romero testified regarding Lopez's subsequent disappearance and the handwritten note, which he left for his mother. The Government also called Marshall Don Hankinson, Jr., who testified about the bounty hunter's apprehension of Lopez in Mexico.

After the testimony, the Government filed a motion for a downward departure for substantial assistance pursuant to § 5K1.1 of the Sentencing Guidelines. The Government stated that Lopez assisted the West Tennessee Drug Task Force in another drug investigation, which resulted in the arrest and pending prosecution of another individual.

In ruling on the objections to the PSR, the district court overruled defense counsel's objection and determined that the obstruction of justice enhancement was appropriate. The district court noted that Lopez fled to Mexico after his arrest and that the police took him into custody only after a bounty hunter procured his presence in California. The district court stated that Lopez's case was delayed by his departure. Moreover, the district court denied the acceptance of responsibility reduction. The district court stated, "this is not the extraordinary situation in which the defendant would be enhanced for obstruction of justice and yet receive a downward departure for acceptance of responsibility." J.A. at 77.

The district court, however, granted the motion for downward departure for substantial assistance pursuant to § 5K1.1 of the Sentencing Guidelines. The district court determined an offense level of 34, with a guideline range of 151 months to 188 months. Therefore, by granting a downward departure for substantial assistance, the district court sentenced Lopez to 132 months' imprisonment, to be followed by five years' supervised release.

Lopez filed a timely appeal. Lopez argues that the district court erred in (1) applying a two-level enhancement for obstruction of justice pursuant to § 3C1.1 of the Sentencing Guidelines; and (2) denying an acceptance of responsibility reduction pursuant to § 3E1.1 of the Sentencing Guidelines.

### III. ANALYSIS

#### A. OBSTRUCTION OF JUSTICE

■ Lopez argues that the district court erred in applying a two-level enhancement for obstruction of justice pursuant to § 3C1.1 of the Sentencing Guidelines. Lopez states that, after his arrest on February 2, 2001, the police released him and did not charge him. Lopez states that there was no federal indictment against him when he left for Mexico. Therefore, he asserts that he did not evade arrest or impede the federal investigation when he traveled to Mexico.

This Court recognizes that it has applied two different standards of review when reviewing the district court's application of § 3C1.1 of the Sentencing Guidelines. *United States v. Cole*, 359 F.3d 420, 430 (6th Cir.2004). This confusion resulted from the Supreme Court's decision in *Buford v. United States*, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001), "in which the Court called for greater deference when reviewing a district court's 'fact-bound' application of a sentencing guideline." *Cole*, 359 F.3d at 430 (citing

*Buford*, 532 U.S. at 66, 121 S.Ct. 1276). Since *Buford*, this Court has "applied both a tri-partite standard of review and a more deferential clear-error standard of review." *Id.* at 430. In *United States v. Middleton*, 246 F.3d 825 (6th Cir.2001) and *United States v. Camejo*, 333 F.3d 669 (6th Cir. 2003), we applied a tri-partite standard of review of a district court's application of § 3C1.1 of the Sentencing Guidelines. "First, we review the district court's findings of fact underlying the enhancement for clear error.... Second, a district court's conclusion that a given set of facts constitutes obstruction of justice is a mixed question of law and fact that we review de novo.... Finally, once a district court has determined that a defendant has obstructed justice, then application of a two-level enhancement at that point is mandatory, and we review the enhancement de novo." *Middleton*, 246 F.3d at 846 (citation omitted). In *United States v. Jackson–Randolph*, 282 F.3d 369 (6th Cir. 2002), however, we held that, in light of *Buford*, the clear error standard of review was "appropriate for reviewing sentencing decisions under § 3C1.1 where the sole issue before the district court is a fact-bound application of the guideline provisions." *Jackson–Randolph*, 282 F.3d at 390. In the instant matter, we do not need to decide the correct standard of review for reviewing the district court's application of § 3C1.1 of the Sentencing Guidelines because the district court's decision was correct under either standard of review.

Section 3C1.1 of the Sentencing Guidelines provides that "[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related

offense, increase the offense level by 2 levels." U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 (2002).

As to whether Lopez willfully obstructed justice, the district court correctly concluded that he did obstruct justice by delaying his federal prosecution. On February 2, 2001, officers arrested Lopez in Memphis, Tennessee and released him because he agreed to cooperate in the investigation. On February 12, 2001, however, officers discovered that he had disappeared and found a handwritten note that he had left for his mother, which stated that he "had to go far away" because he "had serious problems with the police." J.A. at 90. In addition, Lopez informed Bolin's former girlfriend, Lytton, that he would be out of the country for a couple years. It was not until October 2001, which was several months after the grand jury returned an indictment against Lopez, that a bounty hunter finally found him in Mexico. It was apparent, especially from his handwritten note and his conversation with Lytton, that he willfully left Memphis, Tennessee in an effort to impede the investigation and evade prosecution. Although Lopez argues that the federal grand jury had not returned the indictment at the time he left for Mexico, this Court in *United States v. Smart,* 41 F.3d 263 (6th Cir.1994), found a similar argument unavailing. In *Smart,* we held that the district court may consider acts of obstruction prior to a federal indictment if those acts are connected with the federal prosecution. *Smart,* 41 F.3d at 265–66. As in *Smart,* the district court properly considered Lopez's acts of obstruction that related to the federal prosecution in enhancing his sentence pursuant to § 3C1.1 of the Sentencing Guidelines.

## B. ACCEPTANCE OF RESPONSIBILITY

▮ Lopez also argues that the district court erred in denying a sentencing reduction for acceptance of responsibility pursuant to § 3E1.1 of the Sentencing Guidelines. He claims that, prior to leaving for Mexico, he cooperated with the investigation. Moreover, he claims that, after his guilty plea, he assisted law enforcement in another drug investigation.

Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] ... the determination of the sentencing judge is entitled to great deference on review." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1, cmt. n. 5 (2002). Therefore, "[t]he district court's determination regarding acceptance of responsibility must be sustained unless clearly erroneous." *United States v. Angel,* 355 F.3d 462, 476 (6th Cir.2004) (citing *United States v. Webb,* 335 F.3d 534, 537–39 (6th Cir.2003)).

Section 3E1.1 of the Sentencing Guidelines provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 (2002). Pursuant to Application Note 4, however, "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which the adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1, cmt. n. 4 (2002). The defendant bears the burden in proving the extraordinary nature of his case. *Angel,* 355 F.3d at 477 (citing *United States v. Mahaffey,* 53 F.3d 128, 135 (6th Cir.1995)). A district court's determination that a case is extraordinary is a question of law that this Court reviews de novo. *Id.* at 477 (citing *United States v. Gregory,* 315 F.3d 637, 640 (6th Cir. 2003)).

The district court correctly held that Lopez's case is not an extraordinary one in

which adjustments under both § 3C1.1 and § 3E1.1 apply. In fact, Lopez does not even argue that his case is extraordinary. Instead, he argues that, once the court removes the obstruction of justice enhancement, he becomes a more suitable candidate for an acceptance of responsibility reduction. Because the obstruction of justice enhancement is appropriate as set forth above, and because Lopez has failed to establish that his case is extraordinary, the district court properly denied the acceptance of responsibility reduction pursuant to § 3E1.1 of the Sentencing Guidelines.

## IV. CONCLUSION

For the aforementioned reasons, we **AFFIRM** Lopez's sentence.