RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

No. 07-1248

ALFREDO DELAPAZ VASQUEZ,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 01-20052—Thomas L. Ludington, District Judge.

Submitted: March 12, 2009

Decided and Filed: March 23, 2009

Before: MARTIN and GILMAN, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Martin J. Beres, LAW OFFICES OF MARTIN J. BERES, Clinton Township, Michigan, for Appellant. Jennifer J. Sinclair, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. Alfredo DeLaPaz Vasquez appeals his convictions and sentencing in the district court. After Vasquez was arrested in 2001 in an undercover narcotics investigation, he fled the jurisdiction. He was apprehended again in 2006. A jury then convicted Vasquez of (1) conspiracy to possess with intent

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

to distribute more than five kilograms of cocaine, and (2) aiding and abetting in the distribution of 500 grams or more of cocaine. He was sentenced to 240 months of imprisonment on each count, to be served concurrently, and to four years of supervised release. Vasquez contends on appeal that the district court committed reversible errors during his trial and sentencing. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Vasquez was arrested in December 2001 in an undercover drug-bust operation in Saginaw, Michigan. He had arranged, together with Jose Ove Montes, Jr. and Vasquez's brother Juan Delgado Vasquez (Juan), to deliver seven kilograms of cocaine to Detective Michael Winters, who was then serving as an undercover narcotics officer, and to Robert Mason, a government informant. Montes, Vasquez, and Juan had traveled from Texas to Michigan to deliver the cocaine. The record shows that Vasquez actively participated in negotiations over the price of the drug and in arranging other details of the delivery. Shortly after the delivery of one kilogram of cocaine to Winters at a gas station, Vasquez and his confederates were arrested.

Vasquez was released the day following his arrest when he agreed to cooperate with the government in investigating and prosecuting other drug offenders. But after making a controlled delivery to another buyer, Vasquez fled from Michigan to Texas and then to Mexico. Later in December 2001, indictments were issued against Vasquez for (1) conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine (Count 1), and (2) aiding and abetting the distribution of 500 grams or more of cocaine (Count 2). An arrest warrant was also issued for him at the time. Vasquez remained a fugitive for almost five years. He was apprehended in May 2006 in Texas.

The district court appointed attorney Eric Proschek to represent Vasquez at trial pursuant to the Criminal Justice Act. Vasquez and the government subsequently entered into a written plea agreement. During the first plea hearing on August 3, 2006, Vasquez

told the district court that he did not understand English very well and requested an interpreter. The court continued the hearing so that an interpreter could be provided. An interpreter was present at the second plea hearing on August 8, 2006, but Vasquez indicated that he was not ready to plead guilty because he had not reviewed an audio recording of his phone calls in the drug transaction.

At the hearing, Vasquez also requested a new attorney, telling the court: "Every time [Proschek and I] meet we don't understand each other. I don't feel that he trusts what I do with the way we talk." The court denied the request, informing Vasquez that "you can have an attorney of your own choice if you can afford to hire one. . . . If you cannot afford a lawyer, I will appoint one for you and the one that has been appointed by the court is Mr. Proscheck. So those are your options." Thereafter, the court once again continued Vasquez's plea hearing, directed Proschek to use an interpreter when communicating with Vasquez, and instructed Proschek to inform the court within one week whether Vasquez wanted to enter a guilty plea or proceed to trial.

Vasquez did not reach a plea agreement with the government. After another continuance and reassignment to another judge, his trial commenced in October 2006. During voir dire, the district court addressed the parties regarding correspondence that the court had received from Vasquez requesting the substitution of counsel. Vasquez claimed that Proschek had told him "to lie to the judge and lie to the court," declined to file motions of his behalf, would not bring evidence to him, showed up without an interpreter, and refused to provide him with all the discovery obtained from the government. Proschek denied the accusations and stated that he had attempted to meet with Vasquez, but that Vasquez had refused to speak to him even when he was accompanied by an interpreter, that Vasquez and Proschek had no difficulty communicating in English when Vasquez wished to do so, that Vasquez wanted Proschek to present arguments and motions unsupported by the law or the evidence, and that the only discovery he had not discussed with Vasquez was the information he received during the time that Vasquez had refused to speak with him. After hearing from Vasquez and Proschek, the district court denied Vasquez's request.

A jury subsequently found Vasquez guilty on both counts of the indictment. Based upon Vasquez's possession of at least three and a half, but less than five, kilograms of cocaine, the Presentence Report (PSR) set Vasquez's base offense level at 30. With a base offense level of 30 and a criminal history category of III, Vasquez's initial Sentencing Guidelines range was 121 to 151 months of imprisonment. Vasquez did not lodge any objections to the PSR. But the government filed five objections, contending that (1) Vasquez's base offense level should be 32 because his offense involved seven kilograms of cocaine; (2) Vasquez should receive a two-level adjustment for obstruction of justice; (3) Vasquez should receive a two-level adjustment for his leadership role in the offense; (4) Vasquez's total offense level should be 36 based upon objections (1) through (3); and (5) Vasquez's Guidelines range should be 235 to 293 months of imprisonment based upon a total offense level of 36 and a criminal history category of III. All of these objections were sustained by the district court, which sentenced Vasquez to 240 months of imprisonment. This timely appeal followed.

## II.  ANALYSIS

### A.      Motion for new counsel

#### *1.      Standard of review*

We review a district court's decision regarding an indigent defendant's motion for substitute counsel under the abuse-of-discretion standard. *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007). An abuse of discretion occurs where the district court "relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *United States v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006). A defendant seeking the substitution of counsel must "bring any serious dissatisfaction with counsel to the attention of the district court." *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citation and internal quotation marks omitted). Once a defendant expresses his dissatisfaction with counsel, the district court is obliged to conduct an inquiry into the defendant's complaint to determine whether there is good cause for substitution of counsel. *Id.* This court in *United States v. Mack*, 258 F.3d 548 (6th Cir. 2001), set forth the factors to be considered:

> When reviewing a district court's denial of a motion to withdraw or substitute counsel, we generally must consider: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Id.* at 556 (citation omitted).

The Supreme Court has held that "[t]rial judges necessarily require a great deal of latitude in scheduling trials. . . . Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (citation and internal quotations marks omitted). "[W]hen the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *United States v. Whitefield*, 259 F. App'x 830, 834 (6th Cir. 2008) (citation and internal quotation marks omitted).

### 2.    *Analysis*

Vasquez argues that the district court abused its discretion by denying his motion for new appointed counsel. After Vasquez was indicted in December 2001, he fled the jurisdiction before his trial could be scheduled. When he was apprehended more than four years later (in May 2006), his trial was set for August 15, 2006. Vasquez requested a Spanish-speaking interpreter at his first plea hearing on August 3, 2006, causing his hearing to be continued until August 8, 2006. At the August 8 hearing, one week before the trial was scheduled to begin, Vasquez first requested another attorney. The court denied Vasquez's request, but granted Vasquez additional time to meet with Proschek and to decide whether to enter a guilty plea. Vasquez's trial was subsequently rescheduled for August 29, 2006. After Vasquez decided not to enter a guilty plea, the court granted his motion to reschedule his trial for a second time. The trial was reset for October 17, 2006.

Less than two weeks before his rescheduled trial was due to begin, Vasquez again requested substitute counsel in correspondence addressed to the district court. Vasquez reiterated his desire to have new counsel on the morning that his trial was scheduled to commence. He articulated a variety of complaints against Proschek. Proschek denied these allegations and offered an alternative account of their relationship, which the district court accepted. During his trial, Vasquez again asked the court for substitute counsel. He stated that Proschek had refused to argue any of the defenses or to lodge necessary objections that Vasquez thought were applicable.

Proschek responded by pointing out that Vasquez wished to raise issues that lacked merit. He then read the objections written by Vasquez in English into the record. Finally, during allocution, the interpreter read into the record Vasquez's three-page, double-sided, written English statement alleging various deficiencies in Proschek's representation of Vasquez.

We will now apply the *Mack* factors to the foregoing facts. The first *Mack* factor—the timeliness of the motion—weighs against Vasquez. His requests for substitution of counsel, initially made a week prior to the original trial date and again made two weeks before the rescheduled trial date, were untimely. *See Chambers*, 441 F.3d at 447 (finding that the request for substitution of counsel made one and a half months prior to trial was untimely). The application of this factor thus weighs in favor of the district court's decision.

We find that the second *Mack* factor—the adequacy of the district court's inquiry—similarly weighs against a finding of reversible error. The record demonstrates that the district court engaged in multiple lengthy discussions with both Vasquez and Proschek that span many transcript pages regarding their alleged conflicts. During these exchanges, Vasquez had ample opportunity to discuss in detail his complaints regarding Proschek and to respond to Proschek's representations regarding their relationship.

Similarly, the third *Mack* factor weighs against the finding of any error because the extent of the conflict between Vasquez and Proschek was not so great as to "result in a total lack of communication preventing an adequate defense." *See Mooneyham*, 473

F.3d at 292 (citation and internal quotation marks omitted).  Vasquez's initial complaint about Proschek was that the latter did not speak Spanish, making communication difficult.  Proschek disputed Vasquez's account.  We note that, although Vasquez contended that he needed an interpreter, his written statements to the district court demonstrate that he could ably and effectively communicate in English.

Later, Vasquez offered the following grounds for the substitution of counsel: (1) Proschek told him to lie, (2) Proschek refused to file motions that Vasquez felt were necessary to his defense, (3) Proschek refused to bring an interpreter when meeting with Vasquez, and (4) Proschek did not provide him with all of the discovery materials.  Proschek disputed each of these allegations.  Given these conflicting accounts, the district court did not "rel[y] on clearly erroneous findings of fact, improperly appl[y] the law, or use[] an erroneous legal standard," and therefore did not abuse its discretion.  *See Chambers*, 441 F.3d at 446.  Although communication between Vasquez and Proschek may have been strained, the district court was well within its discretion to determine that the conflict was not total or irreconcilable.

Furthermore, the record reflects that any lack of communication between Vasquez and Proschek was likely due to Vasquez's refusal to cooperate with Proschek. *See Jones v. Tennessee Eastman Co.*, 805 F.2d 1036, 1036 (6th Cir. 1986) (unpublished) (holding that the defendant's refusal to cooperate with counsel did not constitute good cause for substitution of counsel and that the trial court was within its sound discretion to deny such a motion); *see also Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (holding that the Sixth Amendment is not violated where "a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust").

The strained relationship between Vasquez and Proschek was not a "complete breakdown in communication" that prevented Vasquez from receiving an adequate defense.  Reviewing the record, we find that Proschek vigorously cross-examined witnesses and read Vasquez's written objection into the record.  *See, e.g.*, *United States v. Gibbs*, 190 F.3d 188, 207 (3d Cir. 1999) (finding that vigorous cross-examination by

counsel constituted an adequate defense despite the defendant's refusal to cooperate with counsel).  Thus the third factor also weighs in favor of the district court's decision.

Turning finally to the fourth *Mack* factor, we find that "the public's interest in the prompt and efficient administration of justice" weighs heavily in favor of the district court's decision.  Vasquez's trial had already been substantially delayed due to his flight and previous requests for continuances. Substitution of counsel would "almost certainly necessitate a last-minute continuance." *See Whitefield*, 259 F. App'x at 834.  The district court's actions are therefore entitled to "extraordinary deference" from us.  *See id.* Because each of the four relevant factors weighed in favor of Vasquez's continued representation by Proschek, we find no abuse of discretion by the district court in denying Vasquez's motion for substitution of counsel.

**B.     Sufficiency of the evidence**

### 1.     *Standard of review*

Vasquez next challenged the sufficiency of the evidence against him.  When deciding if a conviction is supported by sufficient evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007) (emphasis in original) (citation and internal quotation marks omitted).  This standard applies even if the evidence is circumstantial. *United States v. Kone*, 307 F.3d 430, 434 (6th Cir. 2002). All conflicts in the testimony are resolved in favor of the government, and every reasonable inference is drawn in its favor. *United States v. Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992).  Because Vasquez failed to move for a judgment of acquittal at either the close of the government's case or the close of his case, we will reverse his conviction only if the record is "devoid of evidence pointing to guilt," such that a manifest miscarriage of justice occurred. *See United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002).

### 2.     *Analysis*

An individual who aids and abets another in committing an offense is punishable to the same extent as the principal offender.  18 U.S.C. § 2(a).  In order to establish aiding and abetting, the government must show (1) an act by the defendant that contributes to the commission of the offense, and (2) the intent to aid in the commission of the offense.  *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008).  To establish a violation of 21 U.S.C. § 841(a)(1), the government must prove beyond a reasonable doubt that the defendant "(1) knowingly and intentionally distribute[d] cocaine, and[] (2) at the time of such distribution the defendant knew that that the substance was cocaine."  *United States v. Colon*, 268 F.3d 367, 376 (6th Cir. 2001).

Vasquez argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was a knowing and willing participant in the charged drug offenses.  He argues that "[o]ther than the fact that Mr. Vasquez traveled as a passenger in the van with Mr. Ove [Montes] to the location where Ove delivered the cocaine, there was no evidence that Mr. Vasquez's association with the venture was 'such that his participation was intended to bring about the crime or make it succeed.'" Vasquez points to the fact that during the drug delivery to Detective Winters, only Montes got into Winters's vehicle to give him the cocaine.

We disagree with Vasquez's characterization of the evidence.  At trial, numerous witnesses testified as to his involvement in the sale of the cocaine.  Mason, the informant and cooperating witness for the government, testified that he spoke with Vasquez about payment for the cocaine, and that Vasquez quoted him the price.  He further testified that Montes informed him that he could speak to either Montes or Vasquez about the transaction.

Detective Winters also testified.  He related that he had met with both Montes and Vasquez to discuss the transaction, that Vasquez quoted him the price for the cocaine, that Vasquez provided him with a two-ounce sample, that Vasquez told him that Vasquez's brother Juan would be transporting the cocaine to Michigan, and that Vasquez

said that the delivery of the cocaine would be delayed because Juan was having car trouble.

Based on this evidence and reviewing the record in the light most favorable to the government, we conclude that sufficient evidence supported Vasquez's conviction for aiding and abetting the distribution of 500 grams or more of cocaine. Vasquez contributed to the distribution of the cocaine by meeting with Winters to discuss the transaction, quoting the price of the cocaine, keeping in touch with Winters about the transportation and expected arrival time for the cocaine that was delivered, and being present during other discussions involving the transaction and the actual exchange of the cocaine. The substance actually exchanged during the transaction was cocaine that weighed more than 500 grams. Accordingly, there was more than sufficient evidence to support Vasquez's conviction for aiding and abetting the distribution of cocaine.

**C.     Cautionary instructions regarding Detective Winters's testimony**

### *1.     Standard of review*

Because Vasquez failed to object to the jury instructions during trial, we will review these instructions under the plain-error standard of review. *See United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008). A defendant can demonstrate plain error by showing (1) an error, (2) that is plain, and (3) that affects his fundamental rights. *Id.* If the defendant satisfies these three conditions, we may exercise our discretion to correct the error only if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.* We will not reverse a conviction if an error is harmless, meaning that "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Baldwin*, 418 F.3d 575, 582 (6th Cir. 2005) (citation and quotation marks omitted).

### 2.        *Analysis*

A law-enforcement officer may offer dual testimony as a fact witness and as an expert witness where a cautionary instruction is provided to the jury. *United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006). In *Lopez-Medina*, we concluded that plain error occurred because no instruction on expert testimony or on the dual role of the officer was given, and there was no clear demarcation between the officer's expert testimony and his factual testimony. *Id.* at 744. We further found that the defendant's substantial rights and the fairness, integrity, and public reputation of the judicial proceeding were seriously impacted by this error "in conjunction with the other evidentiary errors we find occurred" in the defendant's trial. *Id.* at 745.

In the instant case, Detective Winters testified at trial as both a fact and an expert witness, but the judge failed to give a cautionary instruction regarding Winters's dual role. Vasquez argues that this constitutes reversible error. The government does not dispute that a cautionary instruction was required and that an error occurred. Instead, the government argues that the error was harmless because the district judge gave general instructions regarding the two expert witnesses who testified at trial and that there were no other evidentiary errors.

We agree with the government's argument. Although the failure to give a cautionary instruction was erroneous, the error was a harmless one because Vasquez failed to establish "an effect on his substantial rights[] and a serious impact to the fairness, integrity or public reputation of the judicial proceeding." *See Lopez-Medina*, 461 F.3d at 745. "An effect on substantial rights is typically established through a showing of an actual effect on the outcome of the case." *Id.* (citation omitted). In *Lopez-Medina*, we determined that the defendant made such a showing because the error in the jury instructions, in conjunction with other evidentiary errors, likely affected the outcome of the trial. But we have declined to extend the holding in *Lopez-Medina* to circumstances in which there were no other evidentiary errors. *See Martin*, 520 F.3d at 659-60 (holding that the lack of a cautionary instruction for an officer's dual testimony, although erroneous, did not "seriously affect[] the fairness, integrity, or public reputation

of the proceedings" in the absence of other evidentiary errors). We also declined to extend *Lopez-Medina* in *United States v. Cobbs*, 233 F. App'x 524, 541-42 (6th Cir. 2007), where the prosecution effectively distinguished between the officer's expert and factual testimony and there were no other evidentiary errors.

No other evidentiary errors were alleged in Vasquez's trial. Moreover, during the preliminary instructions, the district judge informed the jurors that "[y]ou must consider and weigh the testimony of all witnesses who appear before you, and you alone are to determine whether to believe any witnesses and the extent to which any witness should be believed." Detective Winters testified in his capacity as an expert on October 18, 2006. When he stepped down, the government stated in the presence of the jury that it planned on "recalling him relating to some of the factual circumstances in this case."

Detective Winters was recalled the following day to testify regarding the facts of the case, after six other government witnesses had testified. After the close of testimony, the district judge generally instructed the jury on how to weigh expert testimony. Furthermore, there was ample evidence to support Vasquez's convictions. We therefore conclude that, although an error occurred, Vasquez's substantial rights were not affected and his convictions should not be reversed on this basis.

**D.     Substantive issues in sentencing**

We now turn to the three substantive issues raised by Vasquez with respect to his sentencing. He argues that the district court erred in (1) determining that his offenses involved seven kilograms of cocaine, (2) increasing his offense level for his leadership role, and (3) increasing his offense level for obstruction of justice. In the following sections, we will address each of these issues in turn.

### 1.     *Drug quantity*

We will not set aside a district court's determination of drug quantity attributable to the defendant for sentencing purposes unless the determination was clearly erroneous. *United States v. Swanberg*, 370 F.3d 622, 624-25 (6th Cir. 2004).  In this case, the determination of the quantity of drugs attributable to Vasquez turns upon the proper application of Sentencing Guidelines § 2D1.1 Application Note 12.  Note 12 states in relevant part:

> If the offense involved both a substantive drug offense and an attempt or conspiracy, . . . the total quantity involved shall be aggregated to determine the scale of the offense.

> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense . . . . If, however, the defendant establishes that the defendant did not intend to provide or purchase, or was not reasonably capable of providing or purchasing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that the defendant did not intend to provide or purchase or was not reasonably capable of providing or purchasing.

U.S.S.G. § 2D1.1, cmt. n.12 (2001).

We have previously held that "[t]he government must prove the amount to be attributed to a defendant by a preponderance of the evidence." *Swanberg*,  370 F.3d at 625.  Once the government has established the negotiated amount of cocaine to be transferred, "the defendant[] ha[s] the burden of proving that [he was] not capable of producing that amount." *United States v. Vasquez*, 352 F.3d 1067, 1071 (6th Cir. 2003) (citation and internal quotation marks omitted).  A district court's finding is clearly erroneous where, although there is evidence to support it, we are "left with the definite and firm conviction that a mistake has been committed." *Id.* at 1070.

Based solely on the fact of conviction for the distribution of cocaine, Vasquez was exposed to a maximum sentence of 20 years in prison.  *See* 21 U.S.C.

§ 841(b)(1)(C). By finding Vasquez responsible for "more than 500 grams but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine" (Count 1), the jury's verdict exposed him to an enhanced statutory maximum of 40 years of imprisonment. *See* 21 U.S.C. § 841(b)(1)(B)(ii)(II). But the fact that the jury found the quantity to be less than five kilograms is not dispositive for sentencing purposes because the district court retains an independent obligation to find sentencing facts by a preponderance of the evidence. *See United States v. Flores*, 477 F.3d 431, 439 (6th Cir. 2007).

Vasquez does not dispute that the agreed-upon amount for the December 2001 transaction was seven kilograms of cocaine. He instead contends that he was not reasonably capable of providing that quantity. Vasquez points to the fact that Montes required a "down payment" of only $2,000 for a transaction that would have involved "upwards of $140,000" to suggest that his "actual intent and ability" was to provide no more than the one kilogram of cocaine actually delivered. He also argues that although there was a lot of "big talk" and that the final quantity of the cocaine negotiated by Detective Winters was seven kilograms, the quantity discussed by Montes, Vasquez, and Winters was "all over the map." The district court, however, disagreed with Vasquez's contention that the actual amount of cocaine at issue was only the one kilogram, and found instead that "[t]he only impediment that the evidence supported for the delivery of the seven kilograms was the fact of coordinating product, money and transportation."

We conclude that the district court did not err in determining that Vasquez's offense involved seven kilograms of cocaine. Neither Montes nor Vasquez ever suggested during the negotiations that they would be unable to provide Mason and Winters with that amount. During the discussions between Montes, Vasquez, and Winters, both Montes and Vasquez participated in the offer to sell seven kilograms for $13,000 per kilogram if Mason and Winters traveled to Texas for a personal pick-up, but that the price would be $23,500 per kilogram if Montes and Vasquez had to take the time and risk of driving the cocaine to Detroit. Montes told Winters that he and Vasquez could not get the full amount of the cocaine until they paid off an outstanding balance

to their supplier in Texas, and Montes asked Winters to front the money for the exchange so that he and Vasquez could obtain the cocaine. Finally, Mason testified that he had witnessed a friend purchase two kilograms from Montes, Vasquez, and Juan on an earlier occasion, and that he had observed that they had a total of ten kilograms to sell during the transaction. All of this evidence establishes that Vasquez was reasonably capable of providing seven kilograms of cocaine to Winters.

### 2.    *Leadership role*

The standard that governs the review of a sentencing enhancement for a leadership role under U.S.S.G. § 3B1.1 is not altogether clear. A district court's legal conclusions are generally reviewed de novo, and its factual findings will not be set aside unless clearly erroneous. *United States v. Moncivais*, 492 F.3d 652, 660 (6th Cir. 2007). In *Buford v. United States*, 532 U.S. 59 (2001), however, the Supreme Court held that a district court's application of the Guidelines should be reviewed deferentially rather than de novo "in light of the fact-bound nature of the legal decision." *Id.* at 66. We need not resolve this uncertainty in the present case because we conclude that the leadership adjustment was appropriate under either standard of review.

A district court may increase a defendant's offense level by two levels if the defendant was "an organizer, leader, manager, or supervisor in any criminal activity of one or more participants." U.S.S.G. § 3B1.1(c), cmt. n.2. More than one person involved in an offense may be a leader or organizer. U.S.S.G. § 3B1.1, cmt. n.4. A defendant qualifies for a leadership enhancement if the district court concludes that he has exercised decisionmaking authority, recruited accomplices, received a larger share of the profits, was instrumental in the planning phase of the criminal venture, or exercised control or authority over at least one accomplice. *United States v. Lalonde*, 509 F.3d 750, 765-66 (6th Cir. 2007).

Vasquez argues that Montes was the sole leader involved in the offense. At trial, however, Detective Winters testified that he had negotiated the price of the cocaine with Vasquez, that Vasquez had informed Winters that the cocaine would be of higher than average quality, and that Vasquez had offered to have his brother Juan transport the

cocaine to Michigan for Winters.  Mason added that he viewed Montes and Vasquez as equals.  Juan Trujillo, another witness for the government, testified that he had bought cocaine from someone nicknamed "Junior," that "Junior" obtained the cocaine from Vasquez, and that "Junior" paid Vasquez for the cocaine.  Based on Vasquez's representations to Winters and Mason, his knowledge and involvement in the details of the transaction, his position as a supplier to others, and his authority over his brother Juan, we conclude that the district court did not err in determining that Vasquez was a leader in this offense.

### 3.     *Obstruction of justice*

"In reviewing a district court's application of obstruction of justice enhancements under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3C1.1 (1998), we employ a three-step process of review."  *United States v. Roberts*, 243 F.3d 235, 237 (6th Cir. 2001) (citation omitted).  These steps are as follows:

> First, this Court applies a clearly erroneous standard to the district court's findings of fact with respect to the enhancement.  Second, a district court's determination of whether facts constitute obstruction of justice is a mixed question of law and fact that requires de novo review.  Third, once there has been a finding that the defendant obstructed justice, application of the enhancement is mandatory, so review of the enhancement at that point is de novo.

*Id.* (citations omitted).  In light of *Buford*, 532 U.S. at 66, we will also "give due deference to the district court's application of the guideline to the facts."  *See United States v. Cline*, 362 F.3d 343, 350 (6th Cir. 2004).

A two-level enhancement for obstruction of justice is appropriate where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction . . . ."  U.S.S.G. § 3C1.1.  Application Note 4 of § 3C1.1 contains a "non-exhaustive list" of examples of the types of conduct to which the obstruction-of-justice enhancement applies, and instructs that the enhancement is appropriate where the defendant has engaged in "escaping or attempting

to escape from custody before trial or sentencing . . . ." U.S.S.G. § 3C1.1, cmt. n.4(e). This section of the Guidelines also provides examples of conduct ordinarily not covered, which includes "avoiding or fleeing from arrest." The district court found that a two-level enhancement was appropriate.

In this case, Vasquez absconded before he was indicted but after he agreed to cooperate in order to obtain his release. Vasquez argues on appeal that his conduct was more akin to "avoiding or fleeing from arrest" rather than "escaping or attempting to escape from custody." He particularly points out that his flight "did not involve any deception, false names, use of an alias, or any other fraudulent misrepresentation to avoid arrest—here he simply absented himself from the jurisdiction to avoid arrest." We are not persuaded. In a case virtually identical to the instant case, this court concluded that a defendant obstructed justice where he delayed his prosecution by agreeing to cooperate in order to obtain his release and then fleeing the jurisdiction upon his release. *United States v. Lopez*, 102 F. App'x 985, 989 (6th Cir. 2004). Exactly as in *Lopez*, Vasquez obtained his release after his initial arrest by agreeing to cooperate with the government. He then fled the jurisdiction. Vasquez never disputed that he fled in order to evade prosecution for a federal offense; nor did he proffer any other reason for his flight. We therefore conclude that the district court did not err in increasing Vasquez's offense level for obstruction of justice.

**E.      Procedural reasonableness of sentencing**

Vasquez's final challenge is to the reasonableness of his sentence. We review sentences imposed by the district court for reasonableness. *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008). Reasonableness review has both a substantive and a procedural component. *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *Vowell*, 516 F.3d at 509. When reviewing a district court's sentencing determination, we "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . ." *Gall*, 128 S. Ct. at 597. "Assuming that the district court's sentencing decision is procedurally sound, the

appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.*

Vasquez argues that his sentence was procedurally unreasonable.  He does not argue, however, that the district court inadequately explained the sentence or considered impermissible factors under 18 U.S.C. § 3553(a).  Instead, Vasquez contends that the district court erred in calculating his applicable Guidelines range.  His argument is primarily based on the sentencing enhancements imposed by the district court because of its determination of the drug quantity, Vasquez's leadership role, and his obstruction of justice.  Because we find no merit in Vasquez's assertions regarding his sentencing enhancements and conclude that the district court did not err, we also reject Vasquez's argument that his sentence was procedurally unreasonable.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.