NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0160n.06

No. 16-5360

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 14, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SEMITRA YOUNG, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |

Before: MERRITT, KETHLEDGE, and WHITE, Circuit Judges.

KETHLEDGE, Circuit Judge. Semitra Young appeals her sentence for conspiracy to distribute oxycodone and hydrocodone in violation of 21 U.S.C. §§ 841 and 846. Young argues that her sentence was procedurally and substantively unreasonable. We reject her arguments and affirm.

I.

Young started using Lortab, a hydrocodone-based opioid, under a doctor's supervision in 2008. By 2011, Young was addicted, taking ten to fifteen Lortab pills a day. When her doctor refused to refill her prescription, Young looked for other ways to get drugs. She started small, forging a single prescription for oxycodone, another opioid painkiller. But soon she was engaged in a criminal conspiracy involving thousands of pills from pharmacies across several states.

In March 2012, police in Southaven, Mississippi arrested Young and another person after they tried to fill a fraudulent prescription for Roxicodone, an oxycodone-based painkiller. When the police searched Young's car, they found fraudulent prescriptions for 1500 pills: 720 Lortab, 600 Roxicodone, and 180 Xanax, an alprazolam-based drug for anxiety. They also found a .380 caliber pistol, and several marijuana cigarettes. The officers then searched Young's hotel room, where they found more fraudulent prescriptions, this time for 1,680 Lortab, 640 Roxicodone, and 90 Xanax pills. They also found materials for making and forging prescriptions, including blank prescription papers; a computer, printer, label maker, and paper cutter; and notebooks containing doctors' DEA numbers, which are identification numbers that allow registered health-care providers to write prescriptions for narcotics.

Three months later, police in Memphis stopped Young and searched her car. Inside her purse, the police found 58 Xanax pills which, according to the label on the bottle, had been prescribed to someone other than Young. The police also found several loose Xanax pills, a hydrocodone pill, several fraudulent prescriptions, and blank prescription papers.

Another three months later, in September 2012, Memphis police stopped Young again. This time, they found a loose hydrocodone pill and an empty bottle of oxycodone, which again was prescribed to someone other than Young. The police also found fraudulent prescriptions for 240 Roxicodone and 480 pills of Percocet—another oxycodone-based opioid—along with notebooks containing information about the fraudulent prescriptions, and several blank prescriptions made out in different names.

In February 2013, Memphis police stopped Young for a third time, searched her car, and found fraudulent prescriptions for 840 Lortab, 360 Roxicodone, and 120 Xanax pills.

In early June 2013, Young and another person made two unsuccessful attempts at filling fraudulent prescriptions in Tennessee and Arkansas. Later that month, Memphis police stopped Young for a fourth time. When they searched her car, they found fraudulent prescriptions for 360 Lortab, 480 Roxicodone, and 360 Xanax pills.

The police eventually determined that Young was part of a drug conspiracy, in which she paid three people to help her fill fraudulent prescriptions, and then sold some of the drugs to another dealer. Young's method was as follows: first, she bought somewhere between 500 and 1,000 sheets of blank prescription paper; then she made fake prescriptions with the fraudulently-obtained DEA numbers, as well as a phone number she controlled. If a pharmacy called to inquire about a prescription, Young or a co-conspirator would answer and pretend to be from a legitimate doctor's office.

In December 2014, the government charged Young with conspiracy to distribute, and possess with intent to distribute, oxycodone and hydrocodone, in violation of 21 U.S.C. §§ 841(b)(1)(c) and 846. Young pled guilty.

The presentence investigation report estimated that Young was responsible for 6,300 oxycodone, 9,400 hydrocodone, and 820 Xanax pills, which were for sentencing purposes the cumulative equivalent of 1275.75125 kilograms of marijuana. The report recommended upward adjustments for Young's leadership role and possession of a firearm, and a downward adjustment for acceptance of responsibility, resulting in a total offense level of 33. The corresponding sentencing guidelines range was 135 to 168 months.

Young objected to the presentence report. She argued that she should not be punished for prescriptions that she had written but not yet filled, nor for drugs she had kept for personal use.

Young also argued that her drug addiction, and the harshness of the oxycodone guidelines, warranted a below-guidelines sentence.

At Young's sentencing hearing, the district court rejected her arguments and sentenced her to 105 months' imprisonment—the low end of the guidelines range, less 30 months for time served on related state-law charges. This appeal followed.

## II.

We review Young's sentence for an abuse of discretion. *United States v. Coppenger*, 775 F.3d 799, 802 (6th Cir. 2015).

## A.

Young argues that her sentence is procedurally unreasonable. A court errs procedurally if it calculates a sentencing guidelines range incorrectly. *Gall v. United States*, 552 U.S. 38, 51 (2007). In a drug case, a guidelines range is incorrect if the court is wrong about the quantity of drugs for which the defendant is responsible. *United States v. Jeross*, 521 F.3d 562, 569-70 (6th Cir. 2008). Young contends that the court was wrong here because, when it found the quantity of drugs for which she was responsible, it included prescriptions that she had written but not yet filled.

The court may count drugs that a defendant intended to obtain, and would have obtained, but for logistical obstacles. *See United States v. Vasquez*, 560 F.3d 461, 472 (6th Cir. 2009). And the quantity of drugs for which a defendant may be held responsible is not limited to drugs that the police actually seize. *See id.*

Here, the unfilled prescriptions that the court counted towards Young's drug quantity were prescriptions ready to be delivered to a pharmacy: they listed drug names and quantities, and doctors' names and DEA numbers. Young does not dispute that she filled or attempted to

fill many similar prescriptions. The evidence thus suggests that Young intended to obtain drugs with the prescriptions, and would have done so had she not been arrested. The court did not err by including the unfilled prescriptions in the calculation of her sentencing guideline range.

Young responds by citing several cases where unfilled prescriptions were excluded from sentencing calculations. *See, e.g.*, *United States v. Rodriguez-Iznaga*, 575 F. App'x 583, 587 (6th Cir. 2014). But those cases involved potentially legitimate prescriptions written by medical professionals. Here, none of the unfilled prescriptions were legitimate and the cases Young cites are therefore inapposite.

Young also contends that the court should not have counted drugs that she planned to use herself. In a drug conspiracy, however, drugs intended for personal use are counted for sentencing purposes. *United States v. Page*, 232 F.3d 536, 542 (6th Cir. 2000). Thus, the court did not err when calculating the drug quantity. Young's sentence was procedurally reasonable.

B.

Young also challenges the substantive reasonableness of her sentence, arguing that the court should have given her a sentence below the guidelines range. Specifically, Young contends that the court should have departed downward because she is a drug addict, and because the oxycodone-to-marijuana conversion ratio is unduly harsh. A district court may depart from the sentencing guidelines range, but it is not obliged to do so. *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011). And a within-guidelines sentence is presumptively reasonable. *United States v. Kamper*, 748 F.3d 728, 739-740 (6th Cir. 2014).

Here, the court considered Young's personal history and drug addiction, but ultimately determined that Young's repeated opportunities to end the conspiracy, and her leadership role in a complex criminal scheme, called for a within-guidelines sentence. Likewise, the court

considered Young's argument about the oxycodone-to-marijuana ratio, but concluded that the known dangers of oxycodone warranted a within-guidelines sentence. The district court therefore did not abuse its discretion, and Young's challenge to her sentence's substantive reasonableness fails.

*     *     *

The district court's judgment is affirmed.