NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0103n.06

Case No. 21-6166

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Feb 23, 2023 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MICHAEL SCOTT REVIS, | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; SILER and MATHIS, Circuit Judges.

SUTTON, Chief Judge. Four days before his trial, Michael Scott Revis asked the district court for new appointed counsel and for more time to review the evidence. The court denied both motions and the case continued to trial as scheduled. The jury ultimately convicted Revis of conspiring to distribute methamphetamine and of attempting to intimidate a witness. Revis appeals, primarily challenging the denial of his pretrial motions. We affirm.

I.

Revis brokered methamphetamine deals in 2018 and 2019 between suppliers in Georgia and a handful of dealers in Tennessee and Kentucky. For "a ten percent service charge," Revis arranged the purchases and pickups, often for as much as a kilogram of meth at a time. R.322 at 82.

Before long, the police learned about the conspiracy. In June of 2020, a grand jury indicted Revis and five associates for conspiring to distribute methamphetamine. 21 U.S.C. §§ 841(a)(1), 846. At his arraignment on July 13, the district court appointed Robert Abell to represent him.

Revis initially sought to speed the proceedings along. Three months after his arraignment, Revis opposed a motion for a trial continuance from a codefendant. Revis also asked to go to trial before his codefendants. He later told the court he would "be ready to proceed [to] trial" on June 23, 2021. R.137. Despite his urging, the court delayed the trial until August 10, 2021, primarily due to COVID-19.

Forced to await trial, Revis developed a plan. Conspiracy, he thought, was "a hearsay charge" that the government could not prove without the testimony of his conspirators. R.323 at 43. If no one talked, he reasoned, no one could be convicted. To get the ball rolling, he sent a note to a former associate. The note told the associate to say that the two never worked together. The problem, as Revis knew, was that the associate had talked already. "I have my discovery and I know what you said," Revis explained in the note. R.332-1 at 1. But Revis had a plan for that too: "Everything you said was an attempt to get out of trouble and you were under the influence and coerced, understood?" R.323 at 44.

The plan backfired. A grand jury indicted Revis again on May 27, 2021, this time adding a charge for witness tampering. 18 U.S.C. § 1512(b)(1). Revis appeared in court for a second arraignment on June 4, 2021, and again days later for a detention hearing.

Revis appeared in court yet again on August 5, 2021. With trial due to begin just four full days later, Revis asked for a continuance and for a new attorney. His attorney, Revis explained, originally provided his discovery documents using a USB drive that he could not access in jail. He had tried to tell the court earlier, he said, but the letters went undelivered. Although he received

a batch of documents a week earlier and more that morning, Revis thought too little time remained to review the "300 pages or 400 pages" of evidence the government planned to use at trial. R.327 at 3.

Revis's counsel saw matters differently. He explained that Revis had access to parts of the discovery earlier and that they had discussed the relevant portions of it. And while he admitted to an imperfect relationship with Revis, he was confident that they could discuss the case and be ready for trial as scheduled.

After taking all this in, the court denied the motions. To mitigate Revis's concerns about preparation, the court directed Revis and his counsel to review the evidence on the Saturday and Sunday before trial, and the court directed the jail to allow Revis time to read the documents. The court concluded that, if they used their time well, "there should be adequate preparation for the trial." *Id.* at 16.

On the morning of trial, the court asked for an update. Revis's counsel reported that he and Revis "met for several hours both Saturday and Sunday." R.320 at 2. They had "pretty thoroughly" reviewed the evidence, he thought, and were ready to proceed. *Id.* He added that he believed "Revis would agree." *Id.* Revis did not object or renew his motions. The case proceeded to trial. After hearing two days of evidence, the jury found Revis guilty.

## II.

Revis advances four independent reasons why we should reverse his convictions.

*Motion to substitute counsel.* He claims the court erred by denying his motion for new counsel. "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence." U.S. Const. amend. VI. To ensure "all" means "all," the government must provide counsel for a defendant who cannot afford one. *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963).

3

Even so, an indigent defendant is not guaranteed the counsel of his choice. If a defendant is dissatisfied with appointed counsel, he must show "good cause" for a switch. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).

When a defendant asks to substitute counsel, a district court must decide if circumstances warrant a change. Because the trial court sees the defendant and his counsel firsthand and has a ringside view of the proceedings, our review of its decision is deferential. *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007). We typically consider four factors: (1) the timing of the defendant's request; (2) the adequacy of the district court's inquiry; (3) the extent of the conflict between the defendant and his counsel; and (4) the public's interest in prompt justice. *Id.* When appointing new counsel would trigger a last-minute continuance, the district court's decision receives "extraordinary deference." *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009) (quotation omitted).

The district court did not abuse its discretion. Begin with timing. At the pretrial conference four days before trial, Revis told the court for the first time that he wanted new counsel. A request days before trial is not timely, as case after case confirms. *See United States v. Trujillo*, 376 F.3d 593, 606–07 (6th Cir. 2004) (three days before trial was untimely); *Mooneyham*, 473 F.3d at 291 (four days); *United States v. Trevino*, 7 F.4th 414, 428–29 (6th Cir. 2021) (thirteen days); *Vasquez*, 560 F.3d at 467 (two weeks).

No "special need to change counsel so close to trial" appears from the record either. *Trevino*, 7 F.4th at 429. Revis's complaint—that counsel did not provide his discovery—was not a new one. Revis's request came ten months after he opposed a codefendant's request for a continuance, and five months after he said he was ready for trial. A defendant may not "await[] trial for months without any complaints regarding his representation, only to bring a last-minute

4

motion for substitute counsel." *United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011); *see United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (untimely to wait one and a half months before trial to complain that attorney had not provided discovery).

Along with time came opportunity. Two months before trial, Revis appeared in court twice. On neither occasion did Revis complain of his attorney's performance or about his access to discovery. *See United States v. Steele*, 919 F.3d 965, 974 (6th Cir. 2019).

Turn to the court's inquiry. When a defendant expresses dissatisfaction with appointed counsel, the trial court must inquire. *United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017). That is what the court did. The court "allowed [Revis] to explain his position and allowed his attorney to respond." *Trevino*, 7 F.4th at 429. The discussion, which lasted around thirty minutes, gave Revis "ample opportunity to" voice his concerns. *Vasquez*, 560 F.3d at 467.

Move to the conflict between client and attorney. After hearing from Revis and his attorney, the court did not find a "total or irreconcilable" conflict between them. *Id.* at 468. Recall that Revis's main grievance concerned access to discovery. But the court credited his attorney's account that Revis possessed the key documents long before trial. And even if Revis did not have all of the documents before then, the court found that Revis had enough time to prepare over the coming days. The court also found that Revis and his attorney had communicated well in the past and that they could continue to do so in the future.

Added up, the court concluded that neither lack of access to discovery nor a breakdown in the attorney-client relationship would impair Revis's defense. Those findings are not clearly erroneous. *See id.*

If anything, time proved both. On the morning of trial, Revis's counsel reported that he had "thoroughly" reviewed the documents with Revis in the days before trial. R.320 at 2. Revis

voiced nothing to the contrary. The evidence at trial also suggested that Revis long had access to discovery. "I have my discovery," Revis wrote to a conspirator eight months before trial. R.332-1 at 1. Revis's counsel also "proved to be a vigorous advocate" at trial. *Trevino*, 7 F.4th at 429.

The public interest in speedy justice points in the same direction. Granting the motion would have required a sizable delay to allow a new attorney to prepare for trial. *See id.* As matters stood on August 5, several prior continuances put the case well past the one-year mark, a reality that cuts against adding delay. *See id.*; *Vasquez*, 560 F.3d at 468. The court did not abuse its discretion by deciding that the public interest weighed against allowing Revis to substitute counsel. *See Trevino*, 7 F.4th at 429.

Revis argues that the timing was not his fault, pointing to his attempts to send letters to the court that were returned. Whatever the value of these efforts, they do not explain why Revis failed to raise his concerns at his court appearances on June 4 or June 10. Nor do they erase the reality that the court did not learn of his complaints until it was too late to address them.

Revis also faults the court for prioritizing the calendar above all else. But the "court heard full argument on the issue and considered all factors relevant to the 'good cause' analysis." *Mooneyham*, 473 F.3d at 292. That Revis and the court assigned different weights to these considerations does not show that the court abused its discretion.

*Motion to continue trial.* Revis also faults the court's decision to deny his motion to continue trial. As with motions to substitute counsel, however, trial courts are entitled to a "great deal of latitude" in managing their calendars. *Morris v. Slappy*, 461 U.S. 1, 11 (1983).

The court did not transgress the bounds of its discretion. Months after opposing a codefendant's continuance and months after informing the court that he was ready for trial, Revis moved to continue just four days before trial. Granting that request would have mangled the

6

court's docket, delayed the case still more, and inconvenienced the parties and witnesses. *See Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir. 1985). Denying the motion did not harm Revis either. *See id.* As the court explained, he had sufficient time to review the documents before trial. *See Mooneyham*, 473 F.3d at 292. To ensure his preparation, the court directed Revis's attorney to spend the weekend assisting Revis. The court also confirmed the morning of trial that those meetings took place. And counsel reported that they were ready. Revis did not say otherwise.

Revis argues in response that his unfamiliarity with the record prevented him from evaluating plea offers. Yet Revis hardly mentioned this point below. *See United States v. Frost*, 914 F.2d 756, 765 (6th Cir. 1990) (reviewing the denial of a continuance based on the reasons presented to the trial court). Regardless, the court found that Revis had access to discovery well before trial.

*Cumulative error.* Revis claims that the court's errors, even if harmless on their own, combine "to render his trial fundamentally unfair." *United States v. Underwood*, 859 F.3d 386, 395 (6th Cir. 2017) (quotation omitted). But because the court did not abuse its discretion by denying his motion for new counsel or his motion for a continuance, "there are simply no errors to cumulate." *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007).

*Ineffective assistance.* Revis also claims that his counsel was ineffective for failing to provide timely access to discovery documents. In line with "our custom," we decline to review that claim on direct appeal. *United States v. Tisdale*, 980 F.3d 1089, 1098 (6th Cir. 2020).

We affirm.