41 F.3d 1508
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee
v.
Bessie O. McGEE and Addie R. Simpson, Defendants-Appellants
 Nos. 93-6045, 93-6067.
 United States Court of Appeals, Sixth Circuit.
 Nov. 22, 1994.
 
 Before: KEITH, BOGGS, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Bessie O. McGee was indicted for scheming to defraud the U.S. Department of Housing and Urban Development [HUD] and certain individuals. The indictment charged McGee with three counts of mail fraud, in violation of 18 U.S.C. Sec. 1341, eight counts of making false statements, in violation of 18 U.S.C. Sec. 1001, and one count of perjury, in violation of 18 U.S.C. Sec. 1623.
 
 
 2
 In the same indictment, Appellant Addie R. Simpson was charged with one count of making false statements to HUD, in violation of 18 U.S.C. Sec. 1001, three counts of making false statements to the U.S. Department of Agriculture, in violation of 18 U.S.C. Sec. 1001, and one count of perjury, in violation of 18 U.S.C. Sec. 1623.
 
 
 3
 The jury found McGee and Simpson guilty on all counts. The district court sentenced McGee to forty-one months in prison and ordered her to pay restitution to individuals who were victims of her fraud against HUD. The district court sentenced Simpson to thirteen months in prison, ordering her to pay restitution to both HUD and the Department of Agriculture.
 
 
 4
 On appeal, McGee contends that the district court erroneously calculated the amount of the loss resulting from her fraud and improperly imposed restitution. Simpson challenges the denial of her motion for severance, the calculation of loss, and the sufficiency of the evidence of guilt as to the three counts of making false statements to the Department of Agriculture.
 
 
 5
 We affirm.
 
 
 6
 * HUD offers a program whereby non-profit organizations lease empty houses from HUD in exchange for a promise to restore the houses and operate them as free housing for the homeless.[1] Directors, officers, and employees of non-profit organizations participating in the program are prohibited from receiving any personal or financial interest or benefit from the leased properties.
 
 
 7
 Bessie O. McGee founded and directed Justice Ministries, a non-profit corporation in Memphis, Tennessee. On behalf of Justice Ministries, McGee leased several houses from HUD and promised to undertake certain repairs prior to making the housing available to the homeless. McGee never repaired the homes and never opened the houses to the homeless. Instead, she charged tenants rent, lived in some of the houses herself, permitted friends and relatives to live in the houses, made false statements to HUD regarding the use of the houses, asked tenants to make similar false statements to HUD, and lied to the grand jury about her own use of one of the houses.
 
 
 8
 Addie R. Simpson worked on a volunteer basis as McGee's assistant at Justice Ministries and served on Justice Ministries' Board of Directors. Simpson resided in three of the leased houses, and by her own admission, she paid no rent while residing in two of them. In 1990 and 1991, Simpson applied three times for food stamps from the Department of Agriculture, falsely representing on her applications the extent of her assets and her family's income. Simpson received food stamps and "shelter cost" (full allowances for rent and utility payments) based on the information contained in those applications.
 
 II
 
 9
 Simpson failed to preserve for appeal her claims that her motion for severance was wrongly denied and that the only evidence to support her conviction on the three counts of making false statements to the Department of Agriculture was hearsay. After careful review of these claims for plain error, we conclude that there is none and the claims are patently without merit.
 
 III
 
 10
 We address in greater detail the defendants' challenges to their sentences. "In considering challenges to a sentence imposed pursuant to the sentencing guidelines, this court applies a clearly erroneous standard of review to the district court's factual findings." United States v. Carr, 5 F.3d 986, 993 (6th Cir.1993). While the district court's application of the guidelines to the facts is entitled to deference, this court reviews legal conclusions de novo. Id.
 
 
 11
 At sentencing, the district court enhanced the offense level of each defendant according to the amount of loss generated by her fraudulent activities, as required by Sec. 2F1.1 of the United States Sentencing Guidelines [U.S.S.G.]. In calculating the loss, the district court relied on application note 7(d) to Sec. 2F1.1, which provides,
 
 
 12
 In a case involving diversion of government program benefits, loss is the value of the benefits diverted from intended recipients or uses.
 
 
 13
 U.S.S.G. Sec. 2F1.1, comment. (n. 7(d)).
 
 
 14
 The district court determined the total loss occasioned by McGee's fraud to be $264,759, consisting of
 
 
 15
 (1) the fair rental value of the houses ($186,194);
 
 
 16
 (2) the difference between the estimated cost of the repairs necessary to meet FHA standards at the time of repossession and the cost of repairs Justice Ministries initially promised to make ($41,000);
 
 
 17
 (3) the amount of rent actually paid to Justice Ministries ($20,330); and
 
 
 18
 (4) the fair rental value of the house McGee occupied ($17,235).
 
 
 19
 Under U.S.S.G. Sec. 2F1.1(b)(1)(I), loss which exceeds $200,000 but not $350,000 requires an upward adjustment of eight offense levels. Therefore, the district court added eight to McGee's offense level. The district court also ordered restitution in the amount of $6,894.98 to be paid to the tenants whom McGee charged rent.
 
 
 20
 The district court set at $7,897 the loss to the Department of Agriculture as a result of Simpson's fraud. The district court found that the loss to HUD was $4,800 based on the rental value of the Vinewood property Simpson fraudulently occupied, bringing the total loss to $12,697. The court ordered Simpson to pay restitution in these amounts to the respective agencies. Under U.S.S.G. Sec. 2F1.1(b)(1)(D), loss which exceeds $10,000 but not $20,000 requires an upward adjustment of three offense levels. Therefore, the district court added three points to Simpson's offense level.
 
 
 21
 * McGee first argues that the value of the loss to HUD is not the fair rental value of the houses leased by Justice Ministries from HUD but the value received by McGee, which was only $37,565. Similarly, Simpson contends that the fair rental value of the Vinewood property was an improper measure of the loss to HUD and that the proper measure of loss was the amount for which HUD leased the property to Justice Ministries--$1 per year. Whether fair rental value is a permissible basis for calculation of loss under U.S.S.G. Sec. 2F1.1 is a question of law over which this court exercises plenary review.
 
 
 22
 Application note 7(d) provides that in the case of diversion of a government program benefit, "loss is the value of the benefits diverted from intended recipients or uses." U.S.S.G. Sec. 2F1.1, comment. (n. 7(d)). HUD in effect donated the rental value of the houses to the homeless people intended to reside there. The government benefit involved here was clearly the rental value of the houses, not the value to McGee or the amount of Justice Ministries' lease payments to HUD. Moreover, the value received by McGee underestimates the loss involved. See U.S.S.G. Sec. 2F1.1, comment. (n. 8) ("The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss."). Therefore, the fair rental value was a permissible predicate for the calculation of loss.
 
 B
 
 23
 Simpson suggests that only McGee should be held responsible for the diversion of government benefits, because McGee alone granted permission to reside in the HUD houses. However, Simpson appeals neither her conviction for making false statements to HUD nor for perjury, and the record relative to those convictions contains evidence from which the district court could infer Simpson's knowledge of her involvement in the fraud against HUD. The district court was also entitled to consider uncharged conduct, such as the testimony of a tenant that Simpson pressured her to lie to HUD about her income, rental and utility payments, and term of occupancy. Under these circumstances, the district court's attribution of responsibility to Simpson was not clearly erroneous.
 
 C
 
 24
 McGee argues that in determining the value of the loss for purposes of U.S.S.G. Sec. 2F1.1 the district court failed to make specific findings in support of its conclusion that the fair rental value of the houses was $186,194. Specifically, she argues that the district court failed to take into account periodic vacancies in the units. She also contends that the district court erred when it included in its calculation of total loss the amount of rent tenants paid to Justice Ministries, the fair rental value of McGee's personal use of the houses, and the difference between the cost of repairs to the houses at time of repossession and the value of repairs which Justice Ministries was obligated to but did not make.[2]
 
 
 25
 We have reviewed the record and conclude that the amount of rent paid by tenants to Justice Ministries and the value of McGee's personal use of the houses should not have been included in the amount of loss. The plain language of application note 7(d) limits the loss in this case to "the value of the benefits diverted from intended recipients or uses." Since the rental value of the houses which McGee used personally and the houses for which some tenants actually paid rent is already part of the total fair rental value of the HUD houses, those amounts cannot be included as loss to the intended recipients without double-counting.
 
 
 26
 We further conclude, however, that the district court did not err in determining that the total loss exceeded $200,000. Note 8 to Sec. 2F1.1 provides,
 
 
 27
 [T]he loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information.... U.S.S.G. Sec. 2F1.1, comment. (n. 8). Although the government's witness testified that the fair rental value of $186,194 did not specifically take into account the actual condition of the properties but was based on rents of area houses with comparable floor plans, the district court could have reasonably concluded that the figure of $186,194 represented the unrepaired value. Thus we cannot say that the court was clearly erroneous in adding to the fair rental value the $41,000 representing the difference between the cost of repairs required to be made by Justice Ministries at the time it contracted to lease the houses from HUD and the cost of repairs at the time of repossession. Therefore, even excluding the double-counted amounts, the loss caused by McGee's fraud exceeded $200,000 and triggered the eight-level enhancement of U.S.S.G. Sec. 2F1.1(b)(1)(I).
 
 D
 
 28
 McGee challenges the district court's order that she pay $6,894.98 in restitution to eleven of the tenants from whom she fraudulently collected rent. McGee claims that these tenants had not been shown to have suffered any loss.
 
 
 29
 We conclude that the order of restitution was proper. To the extent that the tenants from whom McGee collected rent would have been eligible to participate in the HUD program, McGee definitely overcharged them in terms of the pre-1990 rates. See supra note 1. However, the restitution figure represents rental payments made in 1990 and 1991, and there is no evidence as to what rent she could permissibly have charged them after 1989. While it is true that the government did not present evidence that the post-1989 rental rates were excessive, it is also true that the record contains evidence that McGee induced many tenants to rent from Justice Ministries by falsely representing that either she or Justice Ministries owned the properties, that the tenants could "rent to own" the properties, and that repairs would be made to the properties. Further, the district court ordered restitution only of the amounts of rents documented by these tenants. The commentary to U.S.S.G. Sec. 5E1.1 notes that the authority of the sentencing court not to order restitution is limited, and that in determining whether to impose an order of restitution, the court is required to consider the loss to "any victims of the offense," see 18 U.S.C. Sec. 3553(a)(7).[3] In light of this evidence, we cannot say that the district court's findings were clearly erroneous.
 
 IV
 
 30
 Based on the foregoing, this court AFFIRMS the judgment of the district court.
 
 
 
 [1]
 From 1985 until January 1990, rent per person could not exceed $1 per year. Effective January 1990, however, non-profit organizations are permitted to charge a limited amount of rent
 
 
 [2]
 McGee also argues that Justice Ministries, not McGee, was responsible for the failure to make promised repairs. This argument is completely meritless because McGee was founder and executive director of Justice Ministries
 
 
 [3]
 Section 3663 of Title 18 of the United States Code authorizes orders of restitution for violations of that title. Section 3663(a)(2) provides,
 For the purposes of restitution, a victim of an offense that involves as an element a scheme ... means any person directly harmed by the defendant's criminal conduct in the course of the scheme....
 18 U.S.C. Sec. 3663(a)(2). McGee was convicted of a scheme and artifice to defraud HUD in violation of 18 U.S.C. Sec. 1341.