RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0437p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

        *v.*

No. 08-2185

CHRISTOPHER AARON,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-20451-001—Nancy G. Edmunds, District Judge.

Argued: October 13, 2009

Decided and Filed: December 28, 2009

Before: O'CONNOR, Associate Justice;[*] GILMAN and GIBBONS, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Richard M. Lustig, RICHARD M. LUSTIG LAW OFFICE, Birmingham, Michigan, for Appellant. Jeffrey Bryan Wall, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Richard M. Lustig, RICHARD M. LUSTIG LAW OFFICE, Birmingham, Michigan, for Appellant. Jeffrey Bryan Wall, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

[*] The Honorable Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

————————————————

**OPINION**

————————————————

JULIA SMITH GIBBONS, Circuit Judge.   Defendant-appellant Christopher Aaron appeals his conviction on seventeen counts of making and subscribing a false document under 26 U.S.C. § 7206(1).  Aaron provided a false Social Security number on at least 965 W-2Gs that were provided to him each time he won at least $1,200 at various Detroit-area casinos.  At trial, Aaron's defense was that his purpose in providing the false Social Security numbers was to prevent identity theft.  On appeal, he now argues that: (1) the district judge erred by not instructing the jury on his good-faith defense; and (2) his trial counsel was ineffective for not requesting a good-faith instruction, not questioning a juror for cause, and not introducing purportedly probative evidence.  For the reasons that follow, we **AFFIRM** Aaron's conviction.

I.

Beginning in 2000, Aaron became a frequent visitor to numerous Detroit-area casinos, gambling large amounts of money predominantly on slot machines.  By his own account, Aaron would visit the casinos every other Friday, sometimes staying throughout the weekend.  Aaron enjoyed a good deal of success: between January 13, 2000, and December 30, 2003, he won a payout of at least $1,200 on at least 965 separate occasions, with gross winnings exceeding $3.1 million.

In an attempt to track significant gambling income, the Internal Revenue Service ("IRS") requires that any winner of a jackpot of at least $1,200 fill out a W-2G form to be subsequently filed with the IRS by the casino.  *See* Treas. Reg. § 7.6041-1.  Further, every time a customer wins more than $10,000 in a single day, the IRS requires casinos to prepare and file a Currency Transaction Report ("CTR").  *See* 31 C.F.R. § 103.22(b)(2), (c)(3).  Aaron completed and signed a W-2G form at least 965 times during the four years he gambled heavily.  Each and every time Aaron filled out a W-2G,

however, he provided a false Social Security number, causing the various casinos where he had gambled to file hundreds of CTRs containing that same misstatement of fact.

On March 23, 2007, Aaron was indicted on one count of obstructing and impeding the due administration of the tax laws under 26 U.S.C. § 7212(a); seventeen counts of making and subscribing a false document under 26 U.S.C. § 7206(1); and four counts of causing a domestic financial institution to file a report containing a material misstatement of fact under 31 U.S.C. § 5324(a)(2). After some delay due to replacement of defense counsel and recusal of the district judge initially assigned to the case, trial began on March 13, 2008.

Toward the end of an otherwise unremarkable *voir dire*, juror number five, without prompting by the judge or either party, asked the district court: "I do have a question. And I still think I can be fair, but I just want to raise this concern. If the reason the incorrect Social Security number was used was to prevent identity theft, doesn't that admit guilt?" The district court replied "[N]o, not necessarily," and instructed the juror not to evaluate the facts and law prematurely. The court remarked, "I believe you can be fair and impartial based on everything you've told me before." Neither party objected, questioned juror number five any further, or moved to have juror number five struck for cause.

At trial, Aaron admitted that he provided a false Social Security number on each of the W-2Gs. He testified that, despite knowing his true Social Security number was required of him, he provided a false one because he was afraid of identity theft and did not trust the casino to safeguard his identifying information. His defense proved somewhat successful: at the close of its case, the prosecution agreed to dismiss the four counts of causing a domestic financial institution to file a report containing a material misstatement of fact brought under § 5324(a)(2).

Before closing arguments, the district judge instructed the jury on the applicable law. With respect to the charges brought under 26 U.S.C. § 7206(1), the judge instructed:

Any person who willfully makes and subscribes any return, statement, or other document which contains or is verified by a written declaration that is made under the penalties of perjury and which he does not believe to be true and correct as to every material matter shall be guilty of an offense.

The elements of this offense are as follows, one, the defendant made and subscribed a return, statement or other document which was false as to a material matter; two, the return, statement or other document contained a written declaration that it was made under the penalties of perjury; three, the defendant did not believe the return, statement or other document to be true and correct as to every material matter, and four, the defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law.

Neither party objected to the jury instructions as given. Aaron's defense addressed the fourth element; specifically, counsel argued that Aaron had no specific intent to violate the law because he merely intended to prevent his identity from being stolen. The jury acquitted Aaron on the single count of impeding the administration of the IRS, but convicted him on all seventeen counts of making or subscribing a false document. At sentencing, the district court sentenced Aaron to 180 days home confinement and two years probation and imposed a fine of $170,000. Aaron timely appealed.

## II.

Because Aaron failed to object to the jury instructions during trial, we review the jury instructions for plain error. *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009). To demonstrate plain error, Aaron must show: "(1) an error, (2) that is plain, and (3) that affects his fundamental rights." *Id.* (citing *United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008)). If he satisfies these conditions, this court has discretion to "correct the error only if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

III.

The Supreme Court has held that, in criminal tax cases, "the statutory willfulness requirement is the 'voluntary, intentional violation of a known duty.'" *Cheek v. United States*, 498 U.S. 192, 201 (1991) (quoting *United States v. Pomponio*, 429 U.S. 10, 12 (1976)). In order to prove willfulness, the Government must prove "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* The showing of willfulness can be negated by "a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a *good-faith belief* that he was not violating any of the provisions of the tax laws." *Id.* at 202 (emphasis added). The defendant's belief or misunderstanding need not be objectively reasonable, and whether it was held in good faith should be determined by the fact-finder. *Id.* at 202–03.

In contrast, a *good-faith motive* for willfully committing tax fraud has never constituted a proper defense. *Pomponio*, 429 U.S. at 12. In *Pomponio*, during a prosecution under the same statute at issue here, the district court instructed the jury that a willful act was one done "voluntarily and intentionally and with the specific intent to do something which the law forbids, that is to say with [the] bad purpose either to disobey or to disregard the law." *Id.* at 11 (alteration in original). The district court added that "[g]ood motive alone is never a defense where the act done or omitted is a crime." *Id.* The Fourth Circuit disagreed, holding that "the statute at hand requires a finding of bad purpose or evil motive." *United States v. Pomponio*, 528 F.2d 247, 249 (4th Cir. 1975). The Supreme Court explicitly rejected the Fourth Circuit's interpretation, holding instead that the element of willfulness does not require proof "of any motive other than intentional violation of a known legal duty." *Pomponio*, 429 U.S. at 12 (citing *United States v. Bishop*, 412 U.S. 346, 360 (1973)).[1]

---

[1]We have applied this rule in *United States v. Thomas*, 41 F.3d 1508 (Table), 1994 WL 645725 (6th Cir. 1994). In that case, the defendant asserted that he could not be convicted of aiding and assisting in the preparation of a false tax return in violation of 26 U.S.C. § 7206(2) because he had no motive or reason to do so. *Id.* at *6. Relying on *Pomponio*, we rejected his assertion: "[T]he government was not required to present evidence that [the defendant] expected to gain something from assisting . . . in violating the tax laws." *Id.*

This clear precedent renders meritless Aaron's argument that a good-faith motive explaining *why* he violated the tax code should excuse the false statements he made on the W-2G forms. *Cheek* allows a person's good-faith belief or misunderstanding of *what* is required of him by the tax code to negate a claim that his violation of the law was willful. Aaron never argues that he did not know that his real Social Security number was required of him, nor that he believed in good faith that he need not be truthful. In fact, Aaron repeatedly admitted the opposite during direct and cross-examination when he testified that he warned the casino he would give them a false Social Security number and intended to do so to protect himself from identity theft. Therefore, not only was the government under no obligation to prove that Aaron had "evil motive" in providing a false Social Security number, but Aaron's purported "good faith" justification for his actions was irrelevant to the instructions regarding the elements of § 7206. Because Aaron never claimed a good-faith belief that his true Social Security number was not legally required of him, *Cheek* did not require that the district court give an instruction on good-faith belief.

Aaron also contends that, even if he is not entitled to an instruction on good faith, the district court erred by not instructing the jury on the definition of willfulness. Aaron correctly points out that the Supreme Court in *Pomponio* held that an additional instruction on good faith was not necessary when the trial judge had adequately instructed on willfulness. 429 U.S. at 13. From that limited holding, Aaron infers a requirement that district courts must instruct the jury on willfulness. This extrapolation is unfounded; that the district court's instruction on willfulness eliminated the need for it to define good faith does not imply that a definition of willfulness is always required. Typically, it is good practice to include a definition of willfulness when the word is included in the statute or elements of the offense. But even assuming that circumstances exist in which a trial court is required to define willfulness for the jury, a failure to give the instruction would only satisfy the first prong of the plain error test. Aaron does not explain why this purported error affected his fundamental rights, nor are any compelling reasons apparent. If anything, the district court's failure to define willfulness only

helped Aaron because the instruction required by *Cheek*, as discussed above, would have foreclosed the interpretation of willfulness that Aaron suggests here.

IV.

Aaron also contends that his trial counsel was ineffective either because he (a) failed to submit a jury instruction on the issues of good faith or wilfulness; (b) failed to question juror number five for cause after the juror made a statement that arguably suggested he had already prejudged Aaron's guilt; or (c) failed to present other potentially relevant evidence.

"[A]s a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citation omitted).  This rule is in place because ineffective-assistance claims require a finding of prejudice, a factual issue that appellate courts are not properly equipped to resolve. *United States v. Franco*, 484 F.3d 347, 355 (6th Cir. 2007) (citing *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).  "Ineffective-assistance-of-counsel claims are therefore typically pursued in a proper post-conviction proceeding under 28 U.S.C. § 2255." *Crowe*, 291 F.3d at 886 (internal quotation marks and citation omitted).  The record on appeal in this case is not sufficiently developed to warrant resolution of Aaron's ineffective-assistance claim on direct appeal, and we therefore decline to address its merits.

V.

For the foregoing reasons, we AFFIRM the judgment of the district court.