NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0109n.06

Nos. 10-3636, 10-3637

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Jan 31, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| FAISAL M. ALATRASH and | ) | |
| GADA A. ALATRASH, | ) | O P I N I O N |
| | ) | |
| Defendants-Appellants. | | |

BEFORE:    MOORE and GRIFFIN, Circuit Judges; and QUIST, Senior District Judge.[*]

QUIST, District Judge.

In these consolidated appeals, Defendant Faisal Alatrash appeals his conviction of six counts of honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346, arguing that the jury instructions were erroneous in light of *Skilling v. United States*, __ U.S. __, 130 S. Ct. 2896 (2010). Defendant Gada Alatrash, Faisal's wife, appeals her conviction for making a false statement to an FBI agent, in violation of 18 U.S.C. § 1001, challenging the sufficiency of the evidence. Gada also contends that her sentence was procedurally and substantively unreasonable. We affirm on all issues.

---

[*]Honorable Gordon J. Quist, Senior United States District Judge for the Western District of Michigan, sitting by designation.

## I. BACKGROUND

Defendants were charged in a 23-count superseding indictment, with Counts 1 through 22 being alleged against Faisal and Count 23 being alleged against Gada. Faisal was charged with various bribery, fraud, and extortion offenses, as well as conspiracy to bribe in connection with a federally-funded program, all arising out of his oversight of various construction projects for the Greater Cleveland Regional Transit Authority (the "RTA"). Gada was charged with making false statements to an FBI agent who was investigating Faisal's illegal activities.

The RTA is an agency of the State of Ohio that provides public mass transportation to the City of Cleveland and its surrounding communities. Faisal was employed by the RTA as a Project Superintendent/Construction Manager and was responsible for overseeing the RTA's construction projects and administering the contracts covering those projects. Between 2002 and 2008, Faisal used his position to obtain more than $250,000 in illegal payments from various contractors on nine separate RTA contracts for painting, paving, and other work.

Faisal employed various schemes to obtain payments from the contractors. On at least one occasion, he requested money directly from a contractor. Generally, however, his schemes involved obtaining money from the RTA indirectly through inflated numbers via contractor submissions. For example, during a sizable bridge painting project, the contractor requested a change order for work not included in the scope of the original contract. When the contractor told Faisal the amount for the additional work, Faisal instructed the contractor to increase the cost of the change order and to pay Faisal the difference. Faisal employed this change order scheme to obtain illegal payments two or three other times during the project. At the conclusion of the same project, when the contractor

2

had completed its work, Faisal withheld the final contract payment due to the contractor to obtain additional money from the contractor. Faisal released the final payment only after the contractor gave Faisal the additional cash. The contractor usually delivered these cash payments to Faisal by placing a paper bag or envelope containing the cash on or under the seat of Faisal's car.

Faisal also devised ways to pay himself by working with contractors to rig bids. In this scheme, Faisal orchestrated the winning bid by furnishing a contractor a predetermined bid number that included the cost of the actual work to be performed by a subcontractor that Faisal had already selected, plus additional amounts for the complicit general contractor and Faisal. For example, in 2005, Faisal approached George Roditis, who had been involved in the 2002 bridge painting job, about submitting a bid for paving the Randall Park Mall. Faisal told Roditis that he had obtained a bid from Cardinal Asphalt to do the actual paving and instructed Roditis to submit an inflated bid through East-West Painting Company–a sham company Roditis had previously used for minority contractor requirements on previous jobs. After East-West was awarded the contract, the RTA sent a check to East-West, which deducted its share and Cardinal Asphalt's portion and sent a check for the balance to Roditis. Roditis then deducted his share and paid the remainder to Faisal. East-West's bid of over $20,000 included $5,500 for Cardinal Asphalt's work. Faisal received approximately $12,000 from the transaction.

In the summer of 2006, Schirmer Construction was awarded a large contract to do work on an existing bridge. Shortly before Schirmer began its work, Faisal approached Nick Iafigliola, Schirmer's president, and insisted that Schirmer hire L & J Cleaning Services, a company owned by Faisal's wife, Gada, to clean its construction trailers at the job site. Iafigliola initially declined but

eventually agreed after Faisal persisted, insinuating that he could make things difficult for Schirmer at the job site if Iafigliola refused to let Gada clean his trailers. Although Faisal indicated that Gada owned L & J Cleaning Services, Iafigliola always dealt with Faisal and never with Gada. At first, Faisal delivered invoices to Iafigliola at the job site, but began to mail them when Iafigliola insisted that Faisal mail them to Schirmer's offices. Faisal extended the trailer cleaning arrangement to other jobs that Schirmer had with RTA. L & J Cleaning Services had no clients other than Schirmer, and it did not obtain a business registration or open a bank account until several months after it began invoicing Schirmer for cleaning services. When Iafigliola insisted that invoices be mailed to Schirmer, Defendants set up a post-office box for L & J Cleaning Services in a nearby town, rather than in their own town. In all, L & J Cleaning Services billed Schirmer $88,000, which Iafigliola believed was more than double what his company should have paid for the services.

In addition to monetary payments, Faisal used his position to obtain free services from employees of the contractors. In one instance, during the bridge painting project in 2002, John Makris, an employee of American Painting, painted Defendants' house and was not paid. Faisal also had Schirmer crews repair damage to Defendants' house caused by a burst water pipe. The work was worth approximately $5,600.

On January 6, 2009, while investigating Faisal, FBI Agent Dennis Timony interviewed Gada at her home. During the interview, Gada told Agent Timony that she had personally solicited work on behalf of L & J Cleaning Services from Schirmer. Gada also stated that L & J Cleaning Services had other clients besides Schirmer, including Abbey Avenue bridge and Ford Motor Company. In

fact, these clients were simply Schirmer job locations that Faisal was billing for cleaning services.

Finally, Gada told Agent Timony that she had paid Makris $160 for his painting services.

Following a jury trial Faisal was convicted of all but one count and Gada was convicted of making a false statement in violation of 18 U.S.C. § 1001. Faisal was sentenced to 97 months imprisonment and three years of supervised release. Gada was sentenced to 21 months imprisonment and two years of supervised release.

## II. ANALYSIS

### A. The Jury Instructions Were Not Contrary to *Skilling*

Faisal argues that his convictions on Counts 13-18 of the Superseding Indictment, charging honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, must be vacated because the jury instructions included a theory of guilt invalidated by *Skilling v. United States*, __ U.S. __, 130 S. Ct. 2896 (2010). Because defense counsel failed to object to the jury instructions, we review only for plain error. *United States v. Smith*, 601 F.3d 530, 540 (6th Cir. 2010). Faisal must show the following to demonstrate plain error: "'1) an error 2) that is plain, and 3) that affects his fundamental rights.'" *United States v. Aaron*, 590 F.3d 405, 408 (6th Cir. 2009) (citing *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009)). If he makes this showing, this Court has discretion to correct the error only if it "seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.* An instruction is plainly erroneous only if there is an egregious error that affects a miscarriage of justice. *See United States v. Wilkinson*, 26 F.3d 623, 625 (6th Cir. 1994) (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988)).

In *Skilling*, the Supreme Court, confronting a vagueness argument, held that the honest-services statute, 18 U.S.C. § 1346, criminalizes honest services fraud only when it involves bribes or kickbacks. *Id.* at 2933. Faisal argues that his convictions on Counts 13-18 must be vacated because both the indictment and the jury instructions relied on honest services fraud theories invalidated by *Skilling*, including conflict-of-interest and undisclosed self-dealing theories. He contends that because the jury rendered a general verdict, there is no way to determine whether the jury convicted based on a legally valid theory.

Faisal's argument fails because there is no danger that the jury convicted him based on an invalid theory of criminal liability. While Faisal is correct that the superseding indictment and the jury instructions referenced honest services fraud theories invalidated by *Skilling*, the superseding indictment and the instructions make clear that Faisal's bribery and kickback schemes were the central focus of the government's case. Regarding the honest services fraud counts, the district court instructed the jury that it could find Faisal guilty of honest services fraud only if it found that Faisal violated one of two Ohio laws governing public employees:

> To constitute a deprivation of honest services, the services or duties must have been owed under law. Here the United States alleges that the defendant violated Ohio Revised Code Section 102.03, which provides in pertinent part, "No public official or employee shall use or authorize the use of the authority or influence of office or employment to secure anything of value, or the promise or offer of anything of value that is of such a character as to manifest a substantial and improper influence upon the public official or employee with respect to that person's duties. No public official or employee shall solicit or accept anything of value that is of such a character as to manifest a substantial and improper influence upon the public official or employee with respect to that person's duties. [sic].

6

Thus, the jury had to find that Faisal obtained bribes or kickbacks in order to convict. Moreover, in his closing argument regarding the L & J Cleaning Services scheme, the basis for Counts 13-18, the prosecutor emphasized that this sham company and the invoices sent to Schirmer were just another way for Faisal to collect "kickbacks" from RTA contractors. *See United States v. Barraza*, 655 F.3d 375, 382-83 (5th Cir. 2011) (finding no basis to conclude that the jury convicted on an invalid theory of honest services fraud where the closing statement and witness testimony focused on the defendant's "attempts to obtain money and sexual favors in exchange for his assistance in his capacity as a judge"). Finally, even if the instructions permitted the jury to convict on an invalid theory, "this court has adhered to its view that it may determine from the record in a given case that the jury 'necessarily' based a conviction on a valid ground even though the instructions also permitted conviction on grounds subsequently held invalid." *United States v. Palazzolo*, 71 F.3d 1233, 1236 (6th Cir. 1995) (citing *Callanan v. United States*, 881 F.2d 229, 234-35 (6th Cir. 1989)). Here, the jury convicted on both Counts 19 and 20, which charged bribery relating to the L & J Cleaning Services payments. These convictions make clear that there was no error, let alone plain error, in the challenged instructions. *See United States v. Wilkes*, 662 F.3d 524, 544 (9th Cir. 2011) (holding that the jury's conviction on the separate bribery count "confirms beyond any reasonable doubt that the jury would have convicted Wilkes of honest services fraud if the court's definition had been limited to the bribery basis that *Skilling* expressly approved").

**B.    Gada's Statements to Agent Timony Were Material**

Gada argues that her conviction for making a false statement in violation of 18 U.S.C. § 1001 should be vacated because it was based on legally insufficient evidence. This Court reviews *de novo*

7

a district court's denial of a motion for judgment of acquittal for insufficient evidence. *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 2962 (2011). We must consider the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1551 (2011). "We will reverse a judgment based on a finding of insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id.* (quotation omitted). In reviewing the evidence, we must draw "all reasonable inferences in support of the jury's verdict." *Id.* Moreover, where, as in the instant case, a defendant makes a Rule 29 motion on specific grounds, all grounds not specified in the motion are waived. *United States v. Wesley*, 417 F.3d 612, 617 (6th Cir. 2005). In her motion for judgment of acquittal, Gada argued only that the three statements she made to Agent Timony were not material. The district court thus considered only the materiality of the statements.

"A statement is material for purposes of 18 U.S.C. § 1001 if it has the natural tendency to influence or is capable of influencing the federal agency." *United States v. Lutz*, 154 F.3d 581, 588 (6th Cir. 1998) (citing *United States v. Gaudin*, 515 U.S. 506, 509 (1995)). The government need not show that the statement actually influenced the agency, but only that it had the capacity to do so. *Id.* (citing *United States v. Blandford*, 33 F.3d 685, 705 (6th Cir. 1994)). Moreover, a statement may be material even if the receiving agency knows that it is false. *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001) (citing *United States v. Rogers*, 118 F.3d 466, 472 (6th Cir. 1997)).

Gada argues that her three statements to Agent Timony were not material because they were of no consequence to the investigation and there was no evidence regarding how the statements influenced, or were capable of influencing, the investigation. Gada's statements were that: (1) she solicited the cleaning work from Schirmer; (2) L & J Cleaning Services had other clients besides Schirmer; and (3) she paid Makris cash for his painting services. Regardless of whether Agent Timony actually relied on Gada's statements, they all pertained to issues at the core of the investigation of Faisal's illegal bribery and kickback schemes and were capable of influencing the investigation. Thus, the statements satisfied the requisite level of materiality to support Gada's conviction under 18 U.S.C. § 1001.

### C.    Gada's Sentence was Reasonable

Gada argues that her below-Guidelines sentence of 21 months is procedurally and substantively unreasonable. "The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review." *United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010). Review of a district court's sentencing decision involves a two-part test. First, we ensure that "the district court committed no significant procedural error," and second, we consider whether the sentence was substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). Errors which may render a sentence procedurally unreasonable include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Id.*

### 1. *Procedural Unreasonableness*

Gada first contends that her sentence is procedurally unreasonable because the district court erroneously calculated her Guidelines range by attributing the circumstances of Faisal's criminal activity, including the amount of money he obtained, the number of bribes, and the high-level position he occupied with RTA, to Gada in calculating her total offense level. The district court calculated a Guidelines range of 33 to 41 months based on a Criminal History Category of I and an offense level of 20. The district court calculated the offense level by consulting U.S.S.G. App. A, which specifies U.S.S.G. § 2B1.1 for offenses under 18 U.S.C. § 1001. Next, the district court considered the cross reference provisions of U.S.S.G. § 2B1.1(c)(3), which direct that if the count of conviction is covered by another guideline in Chapter Two, that guideline should apply. Because the offense conduct involved obstruction of justice, the district court looked to U.S.S.G. § 2J1.2, which provides a base offense level of 14. The cross reference provision of that section provides, however, that if the offense involved obstructing the investigation or prosecution of a criminal offense, the court should apply the Accessory After the Fact guideline set forth in U.S.S.G. § 2X3.1. Pursuant to § 2X3.1(a), the base offense level is six levels lower than the offense level for the underlying offense. The offense level for Faisal's underlying criminal conduct relating to the L & J Cleaning Services scheme was 26, resulting in a total offense level of 20 for Gada after deducting the six levels pursuant to § 2X3.1(a). Finally, because the offense level under § 2X3.1(a), 20, was higher than the offense level under § 2J1.2, the district court calculated a total offense level of 20.

Gada fails to explain how the district court erred in calculating the Guidelines range, nor does she offer an alternative calculation. She merely argues that the resulting offense level is

"unreasonable" because the Guidelines calculation imputes Faisal's unlawful conduct to her. Regardless, Gada has not shown that the district court failed to calculate the proper Guidelines range.

Gada also argues that her sentence is procedurally unreasonable because the district court failed to give adequate consideration to her sentencing arguments and failed to explain its consideration of the pertinent factors set forth in 18 U.S.C. § 3553(a). Gada failed to preserve these alleged errors at sentencing, thus, we must apply the plain error standard of review. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Gada must show "(1) error (2) that was obvious or clear, (3) that affected [her] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotation marks and citation omitted). Gada fails to show any error. The district court declined to accept Gada's request for probation, but it did grant a four-level downward variance based on the hardship Defendants' children would suffer by losing both their parents to prison. It also considered Gada's minor role in the charged offenses, being limited to lying to cover up for her husband rather than participating in the substantive offenses. These were Gada's essential arguments. At the same time, the district court recognized that Gada engaged in unlawful conduct by lying to Agent Timony, that she benefitted from Faisal's wrongdoing, and that she refused to admit that her husband engaged in unlawful conduct.

Gada's argument that the district court failed to give appropriate consideration to the § 3553(a) factors also lacks merit. "District courts may exercise discretion in determining how much of an explanation of the sentence is required because 'the amount of reasoning required varies according to context.'" *United States v. Jeross*, 521 F.3d 562, 583 (6th Cir. 2008) (quoting *United States v. Liou*, 491 F.3d 334, 338 (6th Cir. 2007)). A district court need not mention each

11

enumerated factor in a "rote listing" before reaching its decision, *United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006), but it must articulate its reasoning to a sufficient degree to allow for meaningful appellate review. *United States v. Brogdon*, 503 F.3d 555, 558-59 (6th Cir. 2007). "[A] sentence is procedurally reasonable if the record demonstrates that the sentencing court addressed the relevant factors in reaching its conclusion." *Id.* (internal citation and quotation marks omitted). Here the district court adequately explained its reasons for imposing the 21-month sentence. As set forth above, the district court determined the correct Guidelines range and explained its reasons why, under the circumstances, an appropriate sentence varied substantially from the Guidelines range but did not include probation. Thus, it cannot be said that the district court failed to consider the relevant § 3553(a) factors.

## 2. *Substantive Unreasonableness*

Gada mentions that her sentence is substantively unreasonable, but she fails to indicate why this is so. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) (internal quotation marks and citation omitted). Therefore, Gada has waived this argument.

## III. CONCLUSION

For the foregoing reasons, we reject Faisal's argument that his conviction of honest services fraud is invalid under *Skilling*, we reject Gada's argument that her statements to Agent Timony were

not material, and we conclude that Gada's below-Guidelines sentence was procedurally and substantively reasonable.

**AFFIRMED**.