**Joel CARTER, Plaintiff–Appellant,**

v.

**Donald RICUMSTRICT, et al., Defendants–Appellees.**

No. 13–1516.

United States Court of Appeals, Sixth Circuit.

Feb. 4, 2016.

BEFORE: BOGGS and DONALD, Circuit Judges; and HOOD, District

Judge.[1]

HOOD, District Judge.

## I.

During the time relevant to this appeal, Joel Carter was an inmate at the Standish Correctional Facility in Standish, Michigan. On November 21, 2006, flooding occurred in cell block area A, which prison officials believed to be caused when one or more inmates flushed personal property down cell toilets. In order to determine which inmates were responsible, prison staff performed a "quartermaster inventory," which involved removing prisoners from their cells and searching the cells to determine which prisoners were missing personal property. When it was time to search Carter's cell, he was ordered to "cuff up," which required him to walk to his cell door and place his hands and wrists through an opening. Carter remained in bed, however, stating that he was too weak to walk. Carter reportedly suffers from multiple sclerosis, with symptoms including intermittent lower-extremity paresthesia and weakness. Carter was initially allowed to remain in his cell during the inventory, lying in bed on his stomach. Later that same day, Carter was approached for a second time about evacuating his cell in connection with the quartermaster inventory. This time he was told to approach the cell door to be handcuffed or risk being sprayed with chemical agents. Carter again objected, stating that he could not walk because of his multiple sclerosis. Upon receiving permission from the warden, a sergeant sprayed chemical agents into Carter's cell. Carter then backed up to the cell door to be cuffed.

Based on these events, Carter sought relief for deliberate indifference to his serious medical needs and for being subjected to cruel and unusual punishment, in violation of the Eighth Amendment. The trial court granted the defendants' motion for summary judgment with respect to all of Carter's claims, but we reversed in part, finding that summary judgment was inappropriate with respect to Carter's excessive-force claim regarding the use of chemical agents. We determined that a genuine issue of material fact existed as to whether Carter was able to walk on his own to be handcuffed and, thus, whether it was necessary to use chemical agents. *Carter v. Ricumstrict*, No. 08–2378 (6th Cir. Jan. 25, 2010). Upon remand, the matter proceeded to a trial by jury, which found in favor of the defendants. Carter now appeals, arguing that the jury's verdict was against the great weight of the evidence and that the district court committed reversible error with respect to an evidentiary ruling and the jury instructions. We affirm the district court's judgment.

## II.

Following the jury's verdict, Carter moved for a new trial or, alternatively, judgment as a matter of law, arguing that there was insufficient evidence to support the jury's verdict. It is well established that "a motion for directed verdict made at the close of evidence is a prerequisite to a motion for judgment as a matter of law on the same grounds" after a jury verdict. *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir.1997); *see also Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1522 (6th Cir.1990). Since Carter did not move for a directed verdict before the case

---

1. The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

was submitted to the jury, pursuant to Federal Rule of Civil Procedure 50(a), the district court correctly determined that he could not do so after trial pursuant to Rule 50(b).

■ The district court also denied Carter's motion for a new trial pursuant to Federal Rule of Civil Procedure 59. The district court laid out its reasoning as follows:

At trial, the jury listened to and observed the testimonies of Plaintiff, Defendants, and other witnesses. The jury considered various evidence, including the video tapes of Plaintiff's extraction from his cell, the movement from his cell to the shower and Defendants' use of the chemical agent. The jury was able to observe the demeanor of the various individuals involved in the incident from live testimonies and the video tapes. There was sufficient evidence to support the jury's verdict of no cause of action.

We review a district court's denial of a motion for a new trial for an abuse of discretion. *Mike's Train House, Inc. v. Lionel, LLC,* 472 F.3d 398, 405 (6th Cir. 2006). An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, applies the law improperly, or applies an erroneous legal standard. *Id.* Further, we will find an abuse of discretion only where we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (citations omitted). After reviewing the record, we are unable to find that the district court abused its discretion in denying Carter's motion for a new trial. The jury heard prison staff members testify that, based upon observations and medical reports, Carter was able to walk at the time in question. Further, in the videotape footage shown to the jury, Carter stands with his back to the cell door immediately after the chemicals were sprayed.

Additionally, a prison logbook showed that there had been no instances in which Carter had been unable to return his meal trays to his cell door, although he claimed to have been unable to walk for approximately ten days surrounding the time in question. Though it is possible that a different jury could have reached a different conclusion, we are not free to reweigh the evidence and set aside the jury's verdict on that basis alone. *Duncan v. Duncan,* 377 F.2d 49, 52 (6th Cir.1967). Rather, since it is clear that sufficient evidence exists to support the jury's verdict in favor of the defendants, the district court did not abuse its discretion by denying the new trial motion.

■ Next, Carter alleges that the district court erred by allowing the jury to hear evidence regarding the types of prisoners housed in the Administrative Segregation Unit, the area where Carter was housed. Over Carter's objection, the defendants were permitted to introduce evidence that inmates are placed in Administrative Segregation when they have a tendency to commit assaults, disobey rules, or when they pose a threat to themselves, other prisoners, or staff. The defendants argued that this evidence was relevant because it explained to the jury why corrections officers could not simply enter Carter's cell without securing him first. In reviewing the district court's relevance determination and its balancing for prejudice and probative value under Federal Rule of Evidence 403 for abuse of discretion, we give the district court broad discretion and "look at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Poulsen,* 655 F.3d 492, 509 (6th Cir.2011) (quoting *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993)). Viewing the evidence

through this lens, we find that the district court did not abuse its discretion in admitting it. While Carter argues that the evidence was irrelevant, the jury was asked to determine whether the use of chemical agents was necessary. The evidence clearly was probative as to defendants' purported need to use chemical agents as a safety measure in the absence of Carter being restrained. Further, the district court did not abuse its discretion in finding that evidence's relevance was not "substantially outweighed by a danger of ... unfair prejudice." Fed.R.Evid. 403. The evidence was limited to general information about prisoners housed in Administrative Segregation and not any disciplinary citations issued to Carter himself.

■ Finally, Carter argues that the district court erred by instructing the jury to consider comparative fault with respect to his Eighth Amendment claim. . The district court instructed the jury, in part, as follows in regard to damages:

Any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to mitigate those damages; that is, to take advantage of any reasonable opportunity the person may have had under the circumstances or will have to reduce or minimize the loss or damage.

If you find Plaintiff was injured as a result of conduct by the Defendants in violation of the Eighth Amendment, you must determine whether Plaintiff could have done something to lessen the harm suffered.

The Defendants have the burden to prove by a preponderance of the evidence that Plaintiff could have lessened or reduced the harm done to the Plaintiff and that Plaintiff failed to do so.

Since Carter failed to raise this claim below, we review it for plain error. *See*

*Woodbridge v. Dahlberg*, 954 F.2d 1231, 1235–37 (6th Cir.1992). "In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Semrau*, 693 F.3d 510, 528 (6th Cir.2012) (internal quotation marks omitted). According to Carter, the instructions given to the jury were clearly erroneous because, as stated in *McHugh v. Olympia Entm't, Inc.*, 37 Fed.Appx. 730, 736 (6th Cir.2002), "[c]omparative negligence ... does not apply to damages for federal constitutional rights violations." Distinguishing between comparative negligence and failure to mitigate damages is often challenging because the doctrines "are in reality the same, and ... the distinction which exists is rather one between damages which are capable of assignment to separate causes, and damages which are not." *BP Expl. & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936, 944 (6th Cir. 2002) (quoting W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 65, at 459 (5th ed. 1984)). We need not unravel that Gordian knot in this instance, however, because the jury instruction clearly does not rise to the level of plain error. Reversal is proper only "if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Morrison*, 594 F.3d 543, 546 (6th Cir.2010) (internal quotation omitted). Further, any error must have "seriously affected the fairness, integrity, or public reputation of the proceedings." *United States v. Aaron*, 590 F.3d 405, 408 (6th Cir.2009) (internal quotation omitted). Because the jury concluded that. the defendants bore no liability whatsoever, it is evident that no prejudice resulted from the damages instruction given.

## III.

For the foregoing reasons, we affirm the decision of the district court.