NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0490n.06

No. 24-3274

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  Plaintiff-Appellee, )<br> )<br>v. )<br> )<br>YOUSIF AMIN MUBARAK, )<br>  Defendant-Appellant. )<br> )<br> ) | **FILED**<br>Oct 21, 2025<br>KELLY L. STEPHENS, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO<br><br>OPINION |

Before: SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Yousif Mubarak was convicted at trial of seven counts of transmitting a threat in interstate commerce. Mubarak challenges the admission of evidence of uncharged threats, the jury instruction given on this evidence, and the admission of real-time cell site location information obtained without a warrant. Seeing no reversible error, we AFFIRM.

I.

Over the course of one week in September 2021, Yousif Mubarak made well over a hundred threatening or harassing phone calls to businesses, schools, and government officials in the small town of Canal Winchester, Ohio. On Friday, September 10, he kicked things off with eleven harassing calls to Judge Andrea Peeples of the county municipal court, who was then presiding over his drunk driving case. He left a voicemail with his full name and number because he wanted that "piece-of-[expletive] [expletive]-sucking [expletive]" to know who was calling. Saturday saw another twenty calls to Judge Peeples. On Sunday night, he called in bomb threats

to a local bar, a Home Depot, and a Best Western.  He then called the county Sheriff's Office to threaten the dispatcher directly.  And he continued calling the Sheriff's Office incessantly over the next twelve hours (8 p.m. to 8 a.m. Central Time) to inform its deputies that they were obese, promiscuous, and not long for this world.  After that all-nighter, Mubarak marked Monday morning with more bomb threats to a middle school and a high school in the area, causing both to be evacuated.  On Thursday, September 16, he made another forty-one calls to threaten Judge Peeples, finally culminating in an explicit threat to her life.  Again, he did not hesitate to leave his phone number and request she call him back.  After all, he was "not even in [expletive] Ohio right now," so "[u]nless you [expletive] get a federal warrant," unless "you . . . get the [expletive] FBI on my [expletive]," he would have nothing to worry about.

The FBI arrested him in Oregon shortly thereafter.  Mubarak was indicted on seven counts of transmitting threats in interstate commerce in violation of 18 U.S.C. § 875(c) for threatening three businesses, two schools, one sheriff, and one judge.  After a four-day trial, the jury convicted him on all counts.  The court imposed seven 60-month sentences to run concurrently.  Mubarak now appeals.

II.

Mubarak first challenges the admission of evidence of other, uncharged calls he made that weekend to a slew of other local businesses (Walmart, Kroger, Taco Bell, McDonald's, Sunoco, BP Duchess, Buffalo Wild Wings, Wendy's, and Massey's Pizza), to the Sheriff's Office, and to Judge Peeples.  In its notice of intent, the Government urged admission of the calls either as intrinsic (that is, *res gestae*) evidence or under Federal Rule of Evidence 404(b). The district court admitted the evidence under both rationales.  The court concluded that the evidence was admissible as intrinsic evidence because it was "spatially and temporally connected" to the charged conduct

and that, in any event, Rule 404(b) would permit its admission to establish identity, intent, and motive. R.135, PageID 771–75. Finally, the district court concluded that the evidence was not substantially more unfairly prejudicial than probative, as required by Federal Rule of Evidence 403. Because we conclude that the evidence was properly admitted under Rules 403 and 404(b), we need not reach the question of whether it would have been admissible as intrinsic evidence.

Rule 404(b) provides that evidence of a defendant's "other crime, wrong, or act is not admissible" to "show that on a particular occasion the person acted" similarly; but "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Even when evidence is properly admitted under Rule 404(b), it may still be excluded under Rule 403 if its prejudicial effect substantially outweighs its probative value. *See* Fed. R. Evid. 403; *Huddleston v. United States*, 485 U.S. 681, 687–88 (1988) (noting that when evidence is "offered for a proper purpose" under Rule 404(b), "the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403"). Mubarak challenges the district court's determination on both fronts.

Start with Rule 404(b).[1] As proof of intent and identity, the district court admitted the existence of, content of, and the volume of calls placed to other businesses and schools using the same telephone numbers Mubarak used for the charged conduct. And in addition to identity and

---

[1] There is some disagreement over the standard of review for the admission of other acts evidence. *Compare United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012) (reviewing the legal determination that the acts were admissible for a permissible purpose de novo), *and United States v. Mandoka*, 869 F.3d 448, 456–57 (6th Cir. 2017) (same), *with Clay*, 667 F.3d at 703 (Kethledge, J., dissenting) (urging the application of an abuse of discretion standard and noting an "intra-circuit" conflict), *and United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010) (applying abuse of discretion). Because the district court did not err under either standard, we need not resolve this ambiguity in this court's precedent.

intent, the district court admitted as proof of motive evidence of uncharged phone calls to the Sheriff's Office and Judge Peeples in which Mubarak expressed anger at the way the two had treated him in prior brushes with the law. On appeal, Mubarak focuses on the uncharged calls to local businesses, arguing that those calls did not pertain to motive and, to the extent the evidence was used to show intent or identity, it was cumulative and thus unfairly prejudicial, under Rule 403, given the otherwise thick evidence on both points. We review a district court's determination that evidence is not substantially more prejudicial than probative for an abuse of discretion, allowing the lower court "very broad discretion in making its determinations." *United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020) (citation modified); *Clay*, 667 F.3d at 693. Indeed, we will take "a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect." *Libbey-Tipton*, 948 F.3d at 701 (quoting *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997)).

As the district court concluded, the challenged evidence was probative of the caller's identity, intent, and motive.[2] The sole unfairly prejudicial effect Mubarak suggests is the tendency of the evidence to portray him, a man with an Arabic name and a Middle Eastern accent, as scheming to "blow up an entire community in central Ohio." Appellant Br. at 32. But any *unfair* prejudice flowing from this evidence is minimal given the *unchallenged* evidence of the charged conduct—Mubarak's bomb threats against three businesses and two schools in the same town. This is not the rare case in which a lower court's judgment call on the question of prejudice merits upending.

---

[2] The district court admitted the evidence of uncharged calls to local businesses only as evidence of identity and intent, not as evidence of motive.

III.

Mubarak also challenges the jury instructions on the other acts evidence. After admitting that evidence, the district court administered a cautionary instruction, and then issued a final instruction before the case was submitted to the jury. In both, the court listed uses of the evidence under Rule 404(b) that it had not blessed in its evidentiary order. In the cautionary instruction, the court added "opportunity" and "knowledge" as permitted uses of the evidence. And in the final instruction, the court also added "preparation," "plan," "absence of mistake," and "lack of accident."

Mubarak failed to preserve this challenge. His prior objection to the admission of the evidence under Rule 404(b) largely ignored the bases to which he now objects. It therefore does not suffice for an objection to the *wording* of either the cautionary or final instructions, which trial counsel let pass without comment. *United States v. Davis*, 547 F.3d 520, 528 (6th Cir. 2008) (discussing *United States v. Fraser*, 448 F.3d 833, 841–42 (6th Cir. 2006)). Thus, we review for plain error. To prevail under that standard, Mubarak must show a clear error by the lower court that affects his substantial rights. *United States v. Aaron*, 590 F.3d 405, 408 (6th Cir. 2009). Even then, we have discretion to "correct the error only if [it] seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (citation omitted). In the jury instruction context, this standard requires "a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Robinson*, 133 F.4th 712, 721 (6th Cir. 2025) (citation omitted).

To be sure, the cautionary and final instructions the district court gave were broader than its prior ruling, which said that the government could introduce the evidence to show intent, identity or motive; and for that reason, they conflicted with the use note in the model instructions

issued by this court. *See* 6th Cir. Pattern Crim. Jury Instr., § 7.13 (directing courts to include only the purposes for which the evidence has been admitted). Mubarak is also right that courts should exercise caution in admitting and instructing the jury on a defendant's prior bad acts given the "high risk of confusion and misuse." *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994). But the risks attendant to this particular error are fairly circumscribed. The court's instruction that the jury could consider the calls as evidence of intent, identity or motive was entirely proper. Any risk here is not that the jury wrongly considered the calls for the improper purpose of showing propensity but merely that the jury may have wrongly considered the calls as evidence of purposes that would be proper in other cases—Mubarak's knowledge, opportunity, preparation, plan, or absence of mistake or accident. And it does not appear that any of these points were controverted at trial or that Mubarak's theory of the case rested on, say, a lack of opportunity to commit the charged acts or a mistake in calling in multiple bomb threats.

In *United States v. Johnson*, this court reviewed a record in which a district court had similarly given over-inclusive and contradictory instructions on the use of bad acts evidence. 27 F.3d at 1194. We concluded that because "the district court's instructions did ultimately include a reference to the proper purpose for which prior acts evidence may be used," because "counsel registered no objection to the instruction given once the evidence was ruled admissible," and because "the evidence of the defendant's guilt is overwhelming," we could not say that the faulty instructions produced a miscarriage of justice. *Id. Johnson*'s reasoning applies here too. In these circumstances, we cannot say that Mubarak has carried the "difficult" burden of showing an effect on his substantial rights. *Greer v. United States*, 593 U.S. 503, 508 (2021) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

IV.

Finally, Mubarak challenges the admission of cell-site location information (CSLI), obtained without a warrant in real time over four hours on the night of September 12–13. This evidence, placing Mubarak in Washington State, was used at trial to help prove that Mubarak transmitted threats in interstate commerce.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. So a threshold question is whether the collection of real-time CSLI amounts to a "search." In *Carpenter v. United States*, the Supreme Court made clear that government access to *historical* CSLI is a "search" within the meaning of the Fourth Amendment. 585 U.S. 296, 316 (2018). By contrast, this court's pre-*Carpenter* caselaw holds that government access to *real-time* CSLI is not a search, *see United States v. Skinner*, 690 F.3d 772, 781 (6th Cir. 2012), a question on which *Carpenter* demurred, 585 U.S. at 316. The district court admitted the real-time CSLI evidence here, holding that *Skinner* excluded such data collection from Fourth Amendment challenge but that, if access to real-time CSLI were a search, the exigent circumstances exception would apply.

Mubarak asks us to overrule *Skinner* and extend the Supreme Court's decision in *Carpenter* to real-time CSLI. We decline the invitation. We don't need to decide whether the gathering of real-time CSLI constitutes a search. Nor do we need to decide whether *Carpenter*'s reservation of the question is the sort of "intervening Supreme Court decision [that] gives us the right to revisit" *Skinner*. *Ne. Ohio Coal. For the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016). Assuming that the Government's "pinging" of Mubarak's phone for location data was a search, the district court held that exigent circumstances justified the search without a warrant. Reviewing the district

court's factual determinations for clear error and its legal conclusions de novo, we agree. *See United States v. Pollard*, 215 F.3d 643, 648 (6th Cir. 2000).

The government does not need a search warrant when the "exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Carpenter*, 585 U.S. at 319 (citation modified). For instance, the need to "protect individuals who are threatened with imminent harm" in "ongoing emergenc[ies]" like "bomb threats" justifies warrantless searches. *Id.* at 320. Those are the very circumstances here.

Mubarak does not meaningfully dispute this point. Instead, he argues that "the exigent circumstance that justified the warrantless search in the first place was gone" once it became apparent on the first "ping" that he was well outside of Ohio and thus posed no imminent threat to the dispatcher or other persons in Ohio. Appellant Br. at 51. We are unconvinced. The district court reasonably concluded that the case involved "an *ongoing* emergency involving multiple bomb threats." R. 124, PageID 546 (emphasis added). The fact that Mubarak was not in Ohio did not abate the danger reasonably feared by the dispatcher. One need not be presently in town to have planted bombs in local businesses or to threaten to detonate them. Indeed, Mubarak told the receptionist at Best Western that he had "two guys with suicide bombs" staying there who would "blow the [expletive] up" "whenever I [expletive] tell them to." Ex. 3.1. Nor was the cognizable danger limited to Canal Winchester, Ohio. An individual willing to threaten indiscriminate murder to multiple businesses and the sheriff can reasonably be thought to pose a danger to whomever he happens to be around, whether in Ohio or Washington. And even if we were to conclude that the exigency did not extend beyond the initial location "ping" that placed Mubarak in Washington State, the resulting error would be harmless. That initial location, which Mubarak does not appear

to challenge, placed him outside of Ohio and thus in interstate commerce, to say nothing of his various statements over the phone that he was "not even in [expletive] Ohio right now" but rather at "[his] girlfriend's house [in] Redmond, [Washington]." Ex. 4.8, 7.2.

* * *

We AFFIRM.